MR. CHIEF JUSTICE HAS WELL
delivered the opinion of the Court.
The question before this Court is whether the District Court’s order closing to the press and public the individual voir dire examination of prospective jurors in a criminal case should be affirmed under the circumstances of this case. Our order of January 18, 1980, vacated the closure and directed the press and public be permitted to attend the voir dire examination with a written opinion to follow. This opinion constitutes the reasons for our decision.
Gene Andrew Austad was charged with two counts of deliberate homicide, robbery, sexual intercourse without consent, and aggravated burglary allegedly committed on April 21, 1978.
His preliminary hearing could not be held until September 18, 1978, because of injuries he sustained in an accident following the crimes with which he was charged. Shortly after the alleged and as yet undiscovered crimes with which he was later charged, Austad was stopped by Great Falls police for a traffic violation, fled the scene of the traffic stop, and a high speed chase ensued culminating *435 in a wreck in which he was severely injured. Following the wreck, authorities discovered evidence of the commission of other offenses which led to the discovery of the body of Mabel Wald, age 69, the victim of the crimes of which Austad was charged.
Following the preliminary hearing, Austad was bound over to the District Court of Cascade County. On October 18, 1978, the District Court denied his motion for an order controlling alleged •prejudicial publicity.
Austad was arraigned on December 27, remained silent, and a not guilty plea to all charges was entered in his behalf.
In February, 1979, Austad was released from the hospital. His bail was reduced permitting him to be taken to the home of his parents to be given the personal care required by his condition.
On May 31 the defendant filed a motion for change of place of trial. On June 1 he moved for sequestration of prospective jurors during voir dire examination and during trial. On June 4 defendant moved for individual voir dire examination of prospective jurors.
On August 24 following a psychiatric and medical examination of defendant to determine his fitness to proceed, an in camera hearing was held by the District Court in its chambers to determine defendant’s fitness to proceed to trial, his ability to assist and communicate with his counsel, and the extent to which the State’s evidence could be reconstructed.
On October 2 the District Court found that defendant’s physical condition made it possible for him to proceed to trial with certain limitations and set a trial date of November 20.
On October 15 defendant moved to close pretrial proceedings.
On November 1, following a hearing closed to the press and public, the District Court entered orders denying defendant’s motion to dismiss for prosecutorial misconduct and granting defendant’s motion to close pretrial proceedings calendared for October 29 to the press and public.
The trial was continued to December 3 at which time an initial panel of 50 prospective jurors were sworn. At the commencement *436 of voir dire examination, the District Court directed that the individual voir dire examination of prospective jurors be closed to the press and public.
On December 14, the Great Falls Tribune filed an original proceeding in this Court seeking a writ of supervisory control (1) directing the presiding judge to permit a Tribune reporter to attend and observe the voir dire examination of prospective jurors, and (2) directing the presiding judge to hold a hearing and thereafter issue findings of fact and conclusions of law showing that defendant’s right to a fair trial was jeopardized.
On the same date this Court issued an order directing the presiding judge to hold a hearing and submit to us hig findings and conclusions concerning his reasons for closing the voir dire examination to the press and public and staying further proceedings in jury selection.
On January 10, 1980 following hearing, the presiding judge filed his findings, conclusions and order closing the voir dire examination to the press and public. In summary, the presiding judge concluded that such closure was required to ensure the right of the defendant to a speedy public trial by an impartial jury in Cascade County. The closure was based upon findings of substantial prejudicial publicity, misstatements of fact, disclosure of defendant’s prior criminal record, and disclosure of evidence not generally known to the public originating in part from the prosecution and police appearing in the Tribune. The presiding judge examined certain alternatives, to closure — sequestration of prospective jurors, change of venue, and continuance of trial to a later date — and rejected each for various reasons.
Defendant filed a motion to dismiss this proceeding which we denied. Briefs were filed by defendant, the State and the Tribune. Oral argument was heard on January 18. Thereafter this Court entered an order vacating the closure with a full written opinion to follow as time permitted.
We do not have a transcript of the District Court hearing as time would not permit its preparation prior to hearing. However, we do *437 have 92 exhibits filed by the Tribune and defendant relating to press coverage including news items in the Tribune, letters to the editor printed in the Tribune, and scripts of radio-television broadcasts. They cover the time period from April 23, 1978 to December 14, 1979. In short, they depict a murder in which a 29 year old defendant is alleged to have raped a 69 year old victim, cut her throat, and stuck a knife in her chest; his fleeing from police in an automobile chase at speeds up to 89 miles per hour after being stopped for a routine traffic investigation; and reporting subsequent events in the criminal prosecution with republication of events leading to defendant’s arrest and the charges filed.
At the outset we observe the existence of a common law rule of open civil and criminal proceedings in the courts of this country. Gannett Co., Inc. v. DePasquale (1979), — U.S.--, 99 S.Ct. 2898, 61 L.Ed.2d 608 and authorities cited therein. The public and the press have "traditionally had access to criminal proceedings and history supports the notion that public trials are the norm.” Rapid City Journal Company v. Circuit Court (1979), S.D., 283 N.W.2d 563; Gannett v. DePasquale, supra, and cases cited therein.
We additionally note that the United States Supreme Court has ruled that the Federal Constitution does not require that a pretrial hearing on a motion to suppress evidence be open to the public and that the press has no federal constitutional right of access to such a proceeding. Gannett Co. v. DePasquale, supra.
However, the situation is considerably different under the Constitution of this State. Article II, Section 9 of the 1972 Montana Constitution provides:
“Section 9. Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.” (Emphasis added.)
The language of this provision speaks for itself. It applies to all persons and all public bodies of the state and its subdivisions *438 without exception. Under such circumstances, it is our duty to interpret the intent of the framers from the language of the provision alone and not to resort to extrinsic aids or rules of construction in determining the intent of the delegates to the Constitutional Convention. Keller v. Smith (1976), 170 Mont. 399, 404, 553 P.2d 1002; Cashmore v. Anderson (1972), 160 Mont. 175, 500 P.2d 921, cert. den. 410 U.S. 931, 93 S.Ct. 1372, 35 L.Ed.2d 593; Vaughn & Ragsdale Co. v. State Board of Equal, (1932), 109 Mont. 52, 96 P.2d 420; Sections 1-2-102 and 1-4-103, MCA. Art. II, Sec. 9 clearly provides that any person has the constitutional right to observe court proceedings unless the demand of individual privacy clearly exceeds the merits of public disclosure.
The merits of public access to criminal proceedings are many and substantial. It protects the accused from “secret inquisitional techniques” and unjust persecution by public officials and “goes far toward insuring him the fair trial to which he is entitled.” Westchester Rockland Newspaper v. Leggett (1979), 48 N.Y.2d 430, 423 N.Y.S.2d 630, 399 N.E.2d 518, and cases cited therein. It promotes justice for the accuser as well — the police and prosecutors who must enforce the law and the victims of crime who suffer when the law is not enforced fairly, impartially and vigorously. Westchester Rockland Newspaper, supra. Open public proceedings have long been recognized as a cornerstone in preserving the quality and integrity of the judicial process. Rapid City Journal Co. v. Circuit Court, supra. Closure of judicial proceedings breeds suspicion and mistrust in the minds of the public and representatives of the media. Such closure is simply censorship at the source — a denial of the right to know. Frequently it is counterproductive; it focuses public attention on the accused and the crime by generating publicity which neither would otherwise merit.
However, this right of access or right to know is not absolute. Our Montana Constitution provides an exception in cases where the demand of individual privacy clearly exceeds the merits of public disclosure. It also guarantees the defendant the right to a speedy public trial by an impartial jury. Art. II, Sec. 24, 1972 *439 Montana Constitution. A balancing of these competing rights is required.
We proceed to analyze this case in this context. We have examined the 92 exhibits of pretrial media coverage. We note that the Tribune has published and republished the background of the case — that defendant is charged with raping and murdering the 69 year old victim, cutting her throat, sticking a knife in her chest and subsequently being apprehended by police after a high speed chase. Television and radio broadcasts are of the same tenor. In our view these items are factual reporting without editorializing and are no more inflammatory than background information on any other brutal crime. One article appeared in the Tribune tending to link defendant with a house burglary five years earlier. This article appeared five to six days after the crime and one and a half years before jury selection. The District Court found that the news articles contained misstatements of fact giving as an example the implication that the high speed chase by police resulted from defendant’s fleeing the scene of the crimes rather than fleeing from a routine traffic investigation.
We find nothing in the news articles, in the scripts of radio and television broadcasts, or in subjecting the prospective jurors to an open and public vior dire examination that would deny or impair defendant’s right to a speedy public trial by an impartial jury under Federal and State Constitutional guarantees. No contention is made that the publicity in this case was massive or pervading to the extent of exerting an influence upon jurors to insure a conviction as in Sheppard v. Maxwell (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 or Estes v. Texas (1965), 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543.
In the modern world it is impossible to create an artifical, antiseptic environment from which prospective jurors may be drawn who have heard nothing of a serious crime committed in their midst. People read newspapers. They listen to radio and television newscasts. It is only where they form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay *440 aside and render a verdict based solely on the evidence presented in court that they become disqualified as jurors. Irvin v. Dowd (1961), 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751, 756; State v. Lewis (1976), 169 Mont. 290, 546 P.2d 518. A probing voir dire examination of prospective jurors is the judicial mechanism for determining this. The purpose of voir dire in a criminal proceeding is to determine the existence of bias and prejudice on the part of prospective jurors and to enable counsel to intelligently exercise his peremptory challenges. State v. Stuit (1978), Mont., 576 P.2d 264, 35 St.Rep. 313. In this case separate, segregated and individual voir dire of prospective jurors was ordered by the Court, but we fail to see just how closing such examination to the public is necessary to guarantee the defendant a fair trial. If during the course of voir dire it should become necessary to allude to inadmissible evidence or similar matters, the presiding judge could briefly close the voir dire for those questions and answers alone, an alternative not considered by the court in this case.
From the foregoing it is apparent that the Montana Constitution imposes a stricter standard in order to authorize closure than does the United States Constitution. Art. II, Sec. 9 of the Montana Constitution has no counterpart in the Federal Constitution. In Gannett the United States Supreme Court left open the question of whether a stricter state constitutional standard is permissible under the Federal Constitution.
“. . . But we are not asked here to declare whether open proceedings represent beneficial social policy, or whether there would be a constitutional barrier to a state law that imposed a stricter standard of closure than the one here employed by the New York Courts . .” — U.S. at--, 99 S.Ct. at 2912-2913, 61 L.Ed.2d at 630.
We note that Gannett is distinguishable from the present case. Gannett involved closure of a pretrial suppression hearing; this case involves closure of the entire voir dire examination of all prospective jurors. In our view pretrial suppression hearings involve a special risk, i. e. disclosure of tainted evidence. Although it is not *441 entirely clear, there is reason to believe that the holding in Gannett may not be applicable to closure of the trial itself. Here the voir dire examination is an integral part of the trial itself. See Commercial Printing Co. v. Lee (Ark. 1977), 553 S.W.2d 270; 21 Am. Jur.2d, Criminal Law § 260; United States v. Woods (3rd Cir. 1966), 364 F.2d 481. Closing any part of the trial is simply the first step down that primrose path that leads to destruction of those societal values that open, public trials promote. Nothing short of strict and irreparable necessity to ensure defendant’s right to a fair trial should suffice.
These are the reasons for our order of January 18, 1980, vacating the closure of the voir dire examination and directing that the press and public be permitted to attend.
MR. JUSTICES DALY and SHEA, concur.