No. 82-218

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

THE STATE OF MONTANA, ex rel.,
DANIEL PAUL SMITH,

                              Relator,

vs.

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT, CASCADE COUNTY,
HONORABLE JOEL G. ROTH, Presiding Judge,

                              Respondents.


ORIGINAL PROCEEDING:

Counsel of Record:

    For Relator:

        Sandra K. Watts argued, Great Falls, Montana

    For Respondents:

        Hon. Mike Greely, Attorney General, Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls, Montana

    For Amicus Curiae:

        Mike Meloy argued, Helena, Montana


                    Submitted: SEP 1 4 1982

                     Decided: DEC - 8 1982

Filed: DEC 8 - 1982


_____
                         Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Defendant Daniel Smith applied to this Court for a writ of supervisory control after respondent, the Eighth Judicial District Court, Judge Roth presiding, denied defendant's motion to exclude public and press from a pretrial suppression hearing. By his application, defendant seeks alternative relief: either (1) an order reversing the District Court's decision and closing defendant's pretrial suppression hearing until the motion to suppress is denied or the case is complete; or (2) an order vacating the District Court's order and remanding the cause for a full evidentiary hearing on defendant's closure motion.

Daniel Smith is charged with deliberate homicide in connection with the October 3, 1981, shooting death of Alfred LaPier, a Great Falls resident. Smith seeks suppression of certain items of evidence taken from his home and person on the date of his arrest. In his motion defendant challenges the lawfulness of his arrest, asserting a lack of probable cause, and the lawfulness of the search, asserting unreasonable search without warrant or consent.

At the time set for hearing on the suppression motion defense counsel noted that members of the public and a Great Falls Tribune reporter were present in the courtroom. Counsel then made an oral motion to close the hearing to public and press on the grounds that defendant's fair trial rights would be substantially affected by dissemination of evidence that might be suppressed. Defense counsel argued to the trial court that under Great Falls Tribune v. District Court of the Eighth Judicial District (1980), ___ Mont. ___, 608 P.2d 116, 37 St.Rep. 502, and American Bar Association (ABA) Standards Relating to Fair Trial and Free Press, Section 3.1 (1968), the suppression hearing should be closed. The State said it had no objection to a public hearing. At this juncture, Judge Roth temporarily closed the hearing to the public and press to give defendant an opportunity

to make an offer of proof.

Defense counsel made no formal offer of proof. Instead, she developed her argument that closure was proper under the Great Falls Tribune case, the 1968 ABA standard, and Gannett Co., Inc. v. DePasquale (1979), 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608, wherein the United States Supreme Court held that: (1) members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend a pretrial hearing on a motion to suppress; and (2) the New York trial court gave proper deference to whatever right of access to criminal proceedings that might be guaranteed by the First and Fourteenth Amendments.

Judge Roth denied defendant's motion. Ruling from the bench, Judge Roth first acknowledged that the Montana Supreme Court had neither squarely addressed the issue of closed suppression hearings nor adopted the 1968 ABA standard proffered by defense counsel, and secondly, concluded that defendant failed to make a substantial showing that dissemination of information garnered at an open suppression hearing would prejudice defendant's right to a trial by an impartial jury. Judge Roth then continued the suppression hearing until such time defendant could apply to this Court for appropriate relief.

Defendant filed an application for writ of supervisory control on June 23, 1982. The State filed its response on July 6, 1982. Subsequently, the Great Falls Tribune sought, and was granted, leave to appear as amicus curiae. The amicus brief was received July 16, 1982, and jurisdiction was accepted July 29, 1982. The Court, sitting en banc, heard oral argument September 14, 1982.

A twofold issue is presented to the Court: (1) whether the public and press can be excluded from a pretrial suppression hearing to ensure a defendant's right to a fair trial; and (2) if a pretrial suppression hearing can be closed, under what standard should closure be determined.

When this Court last considered the interface between a

defendant's constitutional right to a fair trial and the right of the public and press to observe criminal proceedings, there was but one United States Supreme Court decision that addressed similar concerns, Gannett Co., Inc. v. DePasquale, supra. The highest court of the land since has rendered two decisions that have further explored the contours of these particular rights. An understanding of Richmond Newspapers, Inc. v. Virginia (1980), 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973, (plurality opinion), Globe Newspaper Co. v. Superior Ct. (1982), _____ U.S. _____, 102 S.Ct. 2613, 73 L.Ed.2d 248, and the relationship between Gannett and Great Falls Tribune is critical to resolution of the case at bar.

In Gannett Co., Inc. v. DePasquale, supra, the United States Supreme Court upheld a New York trial court's decision to exclude the press and public from a pretrial hearing in a homicide prosecution. Gannett interpreted Sixth and Fourteenth Amendment guarantees to a public trial to be personal to the accused, and not to inhere in the public any independent, enforceable right to attend criminal trials, or as in this instance, pretrial suppression hearings.

Although the court discussed the strong societal interest in public trials and the common law rule of open criminal proceedings, 443 U.S. at 382-387, 99 S.Ct. at 2907-2909, 61 L.Ed.2d 623-628, it expressly stopped short of deciding that the public and press had a right of access to a pretrial hearing under the First and Fourteenth Amendments. To the extent there may be a constitutional dimension to a right of access, noted the court, the trial court had properly assessed that the implicated right was outweighed by defendant's right to a fair trial. 443 U.S. at 391-393, 99 S.Ct. at 2911, 2912, 61 L.Ed.2d 628-630.

Six months after Gannett, this Court was presented with its first fair trial-public trial case. Great Falls Tribune, supra, reversed a trial court's decision to exclude press and public from individual voir dire examinations of prospective jurors. We

- 4 -

held that a trial court cannot restrict the right of any person to observe such proceedings unless exclusion of the public be "a strict and irreparable necessity to ensure defendant's right to a fair trial." 608 P.2d at 121, 37 St.Rep. at 507.

Our decision was not based upon Gannett's articulated public interest in open criminal proceedings or any common law rule of public court proceeding but upon the "Right to Know" provision articulated in Article II, Section 9, of the Montana Constitution. Subject to individual privacy demands or a defendant's right to a fair trial, we determined that any person, including a representative of the media, has a constitutional right to observe court proceedings. 608 P.2d 119, 37 St.Rep. at 505, 506.

Shortly after this Court adopted what was then characterized as a standard stricter than that of Gannett, 608 P.2d at 120, 37 St.Rep. at 507, the United States Supreme Court addressed the question reserved in Gannett: whether the First and Fourteenth Amendments guarantee the public and press a right of access to criminal trials. A right of access under the First Amendment and applied to the states by the Fourteenth Amendment, was recognized by seven Justices in Richmond Newspapers, Inc. v. Virginia (1980), 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973. The case involved a state court order excluding the public and press from an entire trial on fair trial grounds.

Mr. Chief Justice Burger, author of the plurality opinion in Richmond Newspapers, wrote that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." (footnote omitted) 448 U.S. at 581, 100 S.Ct. at 2830, 65 L.Ed.2d at 992. That defendant's right to a fair trial would constitute such an interest was evident; that the trial court neglected to consider "various tested alternatives" to closure which would satisfy the constitutional demand of fairness was critical. 448 U.S. at 581, 100 S.Ct. at 2829, 2830, 65 L.Ed.2d at 580, 581.

In the United States Supreme Court's most recent decision regarding closure of criminal proceedings, a defendant's right to a fair trial was not the preeminent concern. Globe Newspaper Co. v. Superior Court, supra, involved a conflict between the public's right of access to criminal trials and a state statute mandating closure of trial during testimony of a minor rape victim. Justice Brennan's majority opinion definitively established that under the First and Fourteenth Amendments "the press and general public have a constitutional right of access to criminal trials," 102 S.Ct. at 2618, 73 L.Ed.2d at 255 "the denial [of which must be] necessitated by a compelling governmental interest, and [be] narrowly tailored to serve that interest." 102 S.Ct. at 2620, 73 L.Ed.2d at 257. There, the interests asserted to justify closure were the protection of victims from disclosure of sensitive information and the encouragement of reporting and testifying by future victims. The Globe court was not persuaded that either interest justified mandatory closure; therefore, it reversed the state court decision.

From review of these cases three conclusions can be drawn. First, although both the federal and Montana constitution guarantee to members of the public and representatives of the press a right to observe criminal proceedings, the scope of the respective guarantees as yet is not commensurate. The United States Supreme Court has construed the First and Fourteenth Amendments to provide a right of access to criminal trials; a right of access to pretrial criminal proceedings has not been recognized. In contrast, the broad language contained in the Great Falls Tribune case, "that any person has the constitutional right to observe court proceedings," 608 P.2d at 119, 37 St.Rep. at 505, most certainly encompasses pretrial proceedings as well as the actual trial.

Secondly, irrespective of the scope of access rights, the nature of the guarantee under the two constitutions is similar. Whether the basis for the press and public's right of access be

- 6 -

the First and Fourteenth Amendments to the United State Constitution or the "Right to Know" provision of the Montana Constitution, the guarantee is not absolute. It can be properly circumscribed when the right or interest against which it competes is weighty or compelling. Doubtlessly, the right of a criminal defendant to a trial by an impartial jury is such a right.

> "'Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused . . .'" Nebraska Press Association v. Stuart (1976), 427 U.S. 539, 553, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683, 694, citing Sheppard v. Maxwell (1966), 384 U.S. 333, 362-63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620, (emphasis added).

Though concluding that it was not proper to close the proceeding in the Great Falls Tribune case, this Court intimated that in certain circumstances a defendant's right to a fair trial is paramount to the public's right to know. The opinion specifically noted that brief closure of individual voir dire examinations may be proper if during the course of voir dire it becomes necessary to allude to inadmissible evidence. 608 P.2d at 120, 37 St.Rep. at 507. The decision also referred to a pretrial suppression hearing, the implication being that closure then may be appropriate to prevent dissemination of tainted evidence to the pool of prospective jurors.

Finally, the question is open-ended as to precisely what the fair trial closure standard is under federal law. Globe Newspaper Co., is important because it is the first majority opinion recognizing a federal right of access to criminal trials, but it provides little insight as to what standard the United States Supreme Court would employ in resolving a right of access/fair trial question in a pretrial context. The State's interest in shielding a minor rape victim from public scrutiny simply cannot be equated with a criminal defendant's absolute right to a fair trial. It is therefore unlikely that the

"compelling state interest/narrowly tailored means" test would be applicable in a fair trial situation.

What little that can be gleened from Richmond Newspapers, Inc. is that the United States Supreme Court probably will expect trial judges to consider and dismiss less restrictive alternatives to closure before it will uphold the exclusion of public and press from a pretrial criminal proceeding. Although the Burger opinion implies that there are fewer suitable alternatives to closure in a pretrial context, 448 U.S. at 581, 100 S.Ct. at 2830, 65 L.Ed.2d at 992, it does not follow that no alternatives to closure will ensure defendant's right to a fair trial in a pretrial proceeding.

Rather than developing the Great Falls Tribune standard of "strict and irreparable necessity," a standard which emanates from federal cases whose continuing validity is questionable, this Court will follow the course suggested by the State herein. In so doing, we join the courts of Wyoming and Colorado in adopting, in toto, Standard 8-3.2 of the American Bar Association Standards for Criminal Justice (2nd.Ed. 1978)[1] as the appropriate test to reconcile the competing interest of public access and trial fairness. This is a revised and more exacting standard than the one proposed by defendant.

Based upon the Right to Know provision of the Montana Constitution and the right of access recognized under the First and Fourteenth Amendments to the United States Constitution, we hold that the public and press may be excluded from a pretrial suppression hearing only if dissemination of information acquired at the hearing would create a clear and present danger to the fairness of defendant's trial and no reasonable alternative means can be utilized to avoid the prejudicial effect of such information.

The Court encourages trial judges to seek first the voluntary cooperation of the news media representatives whenever possible. Upon being informed of the danger presented by dissemination of

tainted evidence to the community at large as regards defendant's right to a fair trial, we would hope that representatives of the media would exercise prudent judgment and delay mass dissemination of potentially prejudicial information until the jury is impaneled or until an earlier time consistent with the fair administration of justice. The press is very aware of the vital function it serves in preserving the quality and integrity of the judicial process.

> "Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media. In a sense, this validates the media claim of functioning as surrogates for the public. While media representatives enjoy the same right of access as the public, they often are provided special seating and priority of entry so that they may report what people in attendance have seen and heard. This 'contribute[s] to public understanding of the rule of law and to comprehension of the functioning of the entire criminal justice system . . .' Nebraska Press Assn. v. Stuart, 427 U.S., at 587, [96 S.Ct. at 2816, 49 L.Ed.2d at 714] (Brennan, J., concurring in judgment)." Richmond Newspapers, Inc. v. Virginia (1980), 448 U.S. at 572, 573, 100 S.Ct. at 2825, 65 L.Ed.2d at 987.

As well, the press should be especially cognizant of the havoc it can wreak if it fulfills its role in a less than responsible manner. See, e.g., Sheppard v. Maxwell, supra; Estes v. Texas (1965), 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. If a suitable agreement cannot be reached, the trial court must then proceed to hearing.

In determining whether a "clear and present danger" exists the Court suggests that the following facts might be considered: (1) empirical evidence regarding the percentage of general population who read newspapers or who listen to other forms of media; (2) statistics regarding the percentage of media readers/listeners who read or follow homicide or criminal stories; and (3) expert psychological testimony regarding the capacity of an individual to disregard pretrial publicity, which might include tainted evidence, when making an objective determination of the facts upon completion of a trial.

If the evidence adduced supports a finding that there is a clear and present danger to trial fairness, the court should then hear evidence and argument as to whether less restrictive alternatives would suffice to ensure a fair trial. The commentary to Standard 8-3.2 lists the following as alternatives to be considered: (1) continuance, (2) severance, (3) change of venue, (4) change of venire, (5) intensive voir dire, (6) additional preemptory challenges, (7) sequestration, and (8) admonitory instructions to the jury. In this case some of these alternatives are obviously not applicable. Here, before those alternatives be considered, this Court will require the trial court and parties to consider the efficacy of entering a pre-suppression hearing protective order which would forbid mention during the hearing of specific items of evidence sought to be suppressed. If, as in the instant case, the essence of the suppression hearing involves questions as to the lawfulness of the arrest, or the lawfulness of the search, the suppression hearing can proceed without identifying the specific items seized. That would not be the case in a suppression hearing relating to the adequacy of description of items contained in a search warrant; in that situation, the crux of the suppression hearing is the nature or the identity of the particular items seized.

Only if the trial court finds that there is a "clear and present danger" and that less restrictive alternatives, including a protective order, cannot protect defendant's right to a fair trial, should closure be ordered. The Court expects that findings of fact and conclusions of law will be entered to support a closure order. If the trial court decides that closure is not required, the public and press should have immediate access to the transcript of the closed hearing on the closure motion. If closure is ordered, complete records of the closure hearing and the subsequent suppression hearing should be made and remain sealed until completion of the trial or an earlier time con-

sistent with trial fairness. We hereby vacate the District Court's decision and remand this cause for a hearing under the standard adopted by this opinion.

                                    _____
                                    Justice

We concur:

_____
Honorable W.W. Lessley, District
Judge, sitting in place of Mr.
Chief Justice Frank I. Haswell.

_____

_____

_____

_____

_____
Justices

----------------------------------------

[1]The updated version of the ABA's fair trial and free press standard states:

> "Pretrial proceedings: exclusion of public and sealing of records
>
> "Except as provided below, pretrial proceedings and their records shall be open to the public, including representatives of the news media. If at the pretrial proceeding testimony or evidence is adduced that is likely to threaten the fairness of a trial, the presiding officer shall advise those present of the danger and shall seek the voluntary cooperation of the news media in delaying dissemination of potentially prejudicial information by means of public communication until the impaneling of the jury or until an earlier time consistent with the fair administration of justice. The presiding officer may close a preliminary hearing, bail hearing, or any other pretrial proceeding, including a motion to suppress, and may seal the record only if:
>
> "(a) the dissemination of information from the pretrial proceeding and its record would create a clear and present danger to the fairness of the trial, and

"(b) the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means.

"The defendant may move that all or part of the proceeding be closed to the public (including representatives of the news media), or, with the consent of the defendant, the presiding officer may take such action sua sponte or at the suggestion of the prosecution. Whenever under this rule all or part of any pretrial proceeding is held in chambers or otherwise closed to the public, a complete record shall be kept and made available to the public following the completion of trial or earlier if consistent with trial fairness."