No. 89-67
89-94

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989


No. 89-67
STATE, ex rel., GREAT FALLS TRIBUNE
COMPANY, INC., a Montana corporation,
             Applicant,
        -vs-
MONTANA EIGHTH JUDICIAL DISTRICT
COURT, CASCADE COUNTY, HON. JOHN M.
McCARVEL, DISTRICT JUDGE,
             Respondent.

No. 89-94
STATE, ex rel., GREAT FALLS TRIBUNE
COMPANY, INC., a Montana corporation,
             Applicant,
        -vs-
DISTRICT COURT, CASCADE COUNTY, HON.
JOHN M. McCARVEL, DISTRICT JUDGE,
             Respondent.


ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

        For Applicant:

             Peter Michael Meloy argued, Helena, Montana

        For Respondent:

             Hon. Marc Racicot, Attorney General, Helena, Montana
             Dorothy McCarter argued, Asst. Atty. General, Helena
             Patrick L. Paul, County Attorney, Great Falls, Montana
             Russell K. Jones and Keith Douglass, Spokane, Washington


Submitted: July 13, 1989
  Decided: July 26, 1989

Filed:

_____
                          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In these consolidated cases, we conclude that under Montana law, the public and press have a right of access to attend judicial hearings conducted to determine whether probation rights of convicted persons should be revoked; but that in a proper case such as this, a district court may close such a judicial hearing to the public and press under state law without thereby offending the federal constitution. When such hearings are properly closed to the public and press, no member of the public or representative of the press may interrupt the due course of such a hearing in a manner which might defeat the reason for closure. Such an interruption of a properly closed judicial hearing constitutes a contempt of the court.

Cause no. 89-067 arises from an underlying judicial proceeding in the District Court, Eighth Judicial District, Cascade County, wherein the Hon. John M. McCarvel, was presiding. On a date purposely not specified here, District Judge McCarvel ordered that a proceeding for the revocation of the probation of a certain person be closed to the public. After the incidents occurred which are reported hereafter, the Great Falls Tribune, a corporation distributing a newspaper in Great Falls, Montana, filed its application in this Court for a writ of supervisory control directed against the District Court to order the transcript of the revocation hearing to be made available to the Tribune, and to direct the district judge to refrain and desist from closing future revocation proceedings, subject to the rulings of this Court on circumstances which might justify closure.

- 2 -

Cause no. 89-094 is based on an application by Great Falls Tribune Company, Inc. for a writ of review of an order issued by District Judge McCarvel requiring the Tribune reporter, Melody Perkins, to appear before him to show cause why she should not be held for direct contempt of the court. The application in this Court was filed while the contempt proceedings in the District Court were pending but the hearing on contempt was held as scheduled and in the District Court Judge McCarvel adjudged Melody Perkins guilty of contempt and fined her in the sum of $300.00.

We ordered the two cases consolidated for oral argument and decision.

Essentially, the issues presented in the consolidated cases are these:

1. Whether the public and press have a right of access to attend probation revocation hearings.

2. Whether the District Court erred in closing the probation revocation hearing without first conducting an evidentiary proceeding in which the public and press could participate and without making findings of the reasons for closure as required by the state and federal constitutions.

3. Whether Melody Perkins was properly found in contempt.

The transcript of the revocation proceedings in this particular case has been, and still is, under seal. The following facts, however, may be stated, either from express disclosure ordered by us or from a transcript of the contempt proceeding.

Melody Perkins, a reporter for the Great Falls Tribune, assigned to cover the county courthouse, entered District Judge McCarvel's courtroom to observe a probation revocation proceeding already underway. Before she entered, and before the revocation proceeding commenced, court and counsel had

met in chambers concerning the probation proceeding, and thereafter, in open court, the following occurred:

MR. JONES: Thank you, Your Honor. The first matter, I request this be a closed hearing, that all non-necessary persons leave the courtroom, and that the bailiff maintain the security of the courtroom during the hearing. We have stated our reasons previously to Your Honor.

THE COURT: Do you want to put them on the record now, or do you prefer not to?

MR. JONES: I prefer not to. I would be happy to make a record, but I prefer not to do it in open court. Your Honor is aware of our reasons, I believe. Thank you.

THE COURT: You are concerned for the safety of the person involved; is that it?

MR. JONES: Yes, Your Honor.

THE COURT: All right. All those in the courtroom who are not going to participate in this hearing will be asked to leave.

MS. SCHULKE: Does that include the members of our office, Your Honor?

THE COURT: No, not the County Attorney's office.

MS. SCHULKE: Can other members of Probation and Parole be here if they wish to?

THE COURT: Yes. Mary Fay, you can stay if you want.

MR. JONES: Who is Mary Fay?

MS. SCHULKE: A probation and parole officer here in Great Falls.

MR. JONES: All right. Thank you, Your Honor.

At the time that Melody Perkins had entered the courtroom, the decision to close the proceeding, as reported above, had already been made and the probation revocation

- 4 -

hearing itself was ongoing. When she entered, the following occurred:

MS. SCHULKE: Your Honor, I recognize a member of the press here. I don't know her name, but she's from the Tribune.

THE COURT: This hearing is closed.

MS. MELODY PERKINS: Okay.

Melody Perkins left the court and thereafter telephoned her employer. She was instructed by the city editor of the Tribune, Tom Kotynski, to return to the court and there make a request for the grounds of the closure and for a continuance of the proceeding so that the Tribune could contact its attorney. Perkins returned as instructed, and re-entered the courtroom, accompanied by Tom Grimm, a television reporter. At this point, the following occurred:

THE COURT: Just a minute--

MS. MELODY PERKINS: Excuse me. As a representative of the Great Falls Tribune, I would like to know on what grounds this hearing has been closed.

THE COURT: Will you step out? Both of you step out.

MS. MELODY PERKINS: Your Honor, as a representative--

THE COURT: Do you want me to call the sheriff and have him put you out?

MS. MELODY PERKINS: The Tribune requests--

THE COURT: Will you call the bailiff?

MS. MELODY PERKINS: We will leave, Your Honor. Our attorney is being consulted, however.

MR. JONES: Your Honor, I also noticed video-tape cameras at the doors here. I don't know if that's--

MR. DOUGLASS: It's a concern how sound-proof the doors are. If the video cameras are right up to the doors with microphones, if they can hear through, or--

THE COURT: I don't know.

MS. SCHULKE: Someone from the sheriff's office will be here.

. . .

THE COURT: Get ahold of that guy with the TV camera there. See him out there, the guy with the TV camera?

THE BAILIFF: Yes.

THE COURT: I want to find out if he recorded any of this testimony, and tell him he had better not be using it.

THE BAILIFF: Yes.

THE COURT: Have him brought in here, will you?

MR. TOM GRIMM: I'm Tom Grimm, Channel 3.

THE COURT: Do you have a recorder on that camera?

MR. TOM GRIMM: I haven't captured anything that happened in this room.

THE COURT: Oh, all right.

MR. JONES: You are just looking through your lens?

MR. TOM GRIMM: I can't hear anything in the hall what's going on inside here.

THE COURT: Okay.

MR. TOM GRIMM: Can I go?

THE COURT: Yes.

MR. PAT PAUL: That other gentleman was an attorney with another firm in town, and I told him it was closed.

THE COURT: What?

MR. PAT PAUL: The other gentleman, he was an attorney with one of the firms in town, and I asked him to leave. Do you want these guys to stick around [referring to staff members of the sheriff's office]?

THE COURT: Yes.

When the Great Falls Tribune filed its application in this Court for a writ of supervisory control, the Attorney General responded by filing a motion for a review of the transcript of the probation revocation proceeding in camera. The transcript covered the proceeding in court and also the discussions which had occurred in chambers with the court before the revocation hearing. The Tribune objected to the consideration of the sealed transcript by this Court on the grounds that the Tribune would be at a disadvantage as to the argument regarding the propriety of the closure. Later this Court excerpted and made available to all parties the portions of the sealed transcript above quoted.

Ten days after the revocation hearing, District Judge McCarvel issued an order directed to Melody Perkins requiring her to show cause why she should not be cited for contempt. Tom Grimm, the television reporter was not cited. Melody Perkins appeared before Judge McCarvel on the date required, where after a hearing, she was found guilty of contempt and fined $300.00.

RIGHT OF ACCESS TO PROBATION REVOCATION HEARINGS

The United State Supreme Court recognizes a First Amendment right of public access to criminal trials. Richmond Newspapers, Inc. v. Virginia (1980), 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973; Globe Newspaper Company v. Superior Court (1982), 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248. The Supreme Court has also held that the Sixth

Amendment right to a fair trial is a right personal to the defendant and not to the public. Gannett Company, Inc. v. DePasquale (1979), 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608. Although the Supreme Court has not yet interpreted the First Amendment to require public access to civil trials, several federal courts of appeals have taken that step. Publicker Industries, Inc. v. Cohen (3d Cir. 1984), 733 F.2d 1059, 1070; Matter of Continental Illinois Securities Litigation (7th Cir. 1984), 732 F.2d 1302, 1308; Brown and Williamson Tobacco Corp. v. F.T.C. (6th Cir. 1983), 710 F.2d 1165, cert.den. 104 S.Ct. 1595 (1984).

Here, the Attorney General points out that a probation revocation hearing is not a criminal proceeding, State v. Watts (Mont. 1986), 717 P.2d 24, 43 St.Rep. 670; State v. Robinson (1980), 190 Mont. 145, 619 P.2d 813, and argues that because a probation revocation proceeding involves neither the guilt of the defendant nor the imposition of sentence, the interest of the defendant in obtaining a fair trial plays no part in such a proceeding. Accordingly, the Attorney General contends that the primary interest that competes with the public right to know in this type of proceeding is the probationer's right of privacy.

The state constitution of Montana contains in Art. II, § 9, the "right-to-know" provision as follows:

> No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demands of individual privacy clearly exceed the merits of public disclosure.

We held in State ex rel. Tribune v. District Court (1980), 186 Mont. 433, 608 P.2d 116, that the foregoing constitutional provision speaks for itself and applies to all persons and all public bodies of the state and the

- 8 -

subdivisions without exception. Moreover, the provision applies to civil judicial proceedings, Cox v. Lee Enterprises, Inc. (Mont. 1986), 723 P.2d 238, 43 St.Rep. 1476. Since the days of the Bannack statutes, the sittings of all courts by statute in Montana have been required to be public. Section 3-1-312, MCA.

It is clear to us, therefore, that the public and the press have the right under state law to attend and observe with limited exception the hearings of the courts of this state. The press also enjoys this right through its individual representatives and because of its surrogate role for the public. Richmond Newspapers, Inc. v. Virginia (1980), 448 U.S. at 572, 573, 100 S.Ct. at 2825, 65 L.Ed.2d at 987. The state exception to this right occurs only in cases in which the demands of individual privacy clearly outweigh the merits of public disclosure. Art. II, § 9, supra.

RIGHT OF THE PUBLIC AND THE PRESS TO PARTICIPATE IN THE CLOSURE DECISION

This Court received the transcript of the probation revocation proceeding from the District Court under seal. The transcript was examined by us in camera and upon such examination we determined not to grant the motion of the Great Falls Tribune to unseal the transcript record. Instead, we directed the parties to brief the issues in these cases by assuming as a premise the following facts:

> The District Court closed the revocation hearing to the press and public to protect a person from harm which might otherwise occur if the revocation was made public.

In the stated premise, we did not use the term "physical harm" but counsel for the Tribune interpreted correctly that that was what was meant. Counsel conceded on oral argument

- 9 -

that such an assumed premise would be a proper reason for the court to order closure of the proceeding.

The Tribune, however, argues along other lines as to the propriety of the closure. It contends that before the closure was ordered, the court should have provided some notice to the public of its intention to close; then conduct an evidentiary hearing in which the public and press can participate; and, make express findings of fact as to the reasons for the closure. The Tribune points to the rule in the Court of Appeals of the Third Circuit, where no order closing civil or criminal proceedings may be entered by any federal district court judge until notice of the closure is given to the press and public. U.S. v. Criden (3d Cir. 1982), 675 F.2d 550. The lack of such a rule here, contends the Tribune, causes the Tribune to bear the burden of attacking the propriety of the District Court's decision to close, when that burden should have remained on the particular defendant involved.

The argument of the Great Falls Tribune finds precedent in State ex rel. Daniel Paul Smith v. District Court, Eighth Judicial District (1982), 201 Mont. 376, 386, 654 P.2d 982, 988. In Smith, we determined that a closure of a pretrial suppression hearing should occur only if there were a "clear and present danger" to defendant's fair trial and no reasonable alternative means could be utilized to avoid the prejudicial effect of such information. The holding in Smith modified, to some extent, our previous holding in Great Falls Tribune v. District Court, supra, which adopted a strict and irreparable necessity standard for closure, "where the demands of individual privacy clearly exceeded the merits of public disclosure." 186 Mont. at 441, 608 P.2d at 119. However, with respect to the right-to-know provision of the Montana Constitution, this Court stated in The Missoulian v.

Board of Regents of Higher Education (1984), 207 Mont. 513, 529, 675 P.2d 962, 971:

> However, the right to know is not absolute. The more specific closure standard of the constitutional and statutory provisions requires this Court to balance the competing constitutional interests in the context of the facts of each case, to determine whether the demands of individual privacy clearly exceed the merits of public disclosure. Under this standard, the right to know may outweigh the right of individual privacy, depending on the facts. (Emphasis in original.)

Whenever the court must determine whether a privacy interest is protected under the state constitution, we apply a two-part test: (1) whether the person involved had a subjective or actual expectation of privacy; and, (2) whether society is willing to recognize that expectation as reasonable. Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 441, 649 P.2d 1283, 1287. Applying that test here, when the District Court determined that the person involved must be protected from physical harm arising from participation in the proceeding, the subjective expectation of that person to privacy was established. The second prong of the test is met because the risk to the person's individual safety from disclosing adverse information to the public would compel a reasonable person to recognize the expectation of privacy.

It should be noted that the competing interests here differ in large respect from competing interests involved in other cases. Thus, in Great Falls Tribune, supra, the right to know was weighed against the defendant's right to a fair trial. In State ex rel. Daniel Smith, supra, this Court held that the defendant's right to a fair trial would be paramount to the public's right to know if disclosure of the pretrial suppression hearing would affect his fair trial. In The

- 11 -

Missoulian v. Board of Regents (1984), 207 Mont. 513, 675 P.2d 967, the Board of Regents was required to balance the public's right to know against the individual's right of privacy with respect to employment evaluations. There the right of individual privacy was held to be paramount.

It is true, however, that the law requires that if closure of a portion of a judicial proceeding is necessary, the procedure imposing the least restriction on the public right to know should be followed. In The Missoulian v. Board of Regents, supra, this Court did address possible alternatives to closure of job performance evaluation meetings, and determined that there was no adequate alternative which would preserve the privacy of the individual and at the same time prevent the evaluations from being effective. That kind of consideration applies to the case at bar. Any leaking out of the information would endanger the physical safety of a person involved. There were no reasonable alternatives that the District Court could follow here. For that reason, we hesitate to adopt the Third Circuit rule that notice must be given of all potential closure decisions, and would rather allow the district courts to proceed on an ad hoc basis to make the decision in accordance with the facts and circumstances facing the district courts at the time. Justice Rehnquist (now Chief Justice) in Gannett Company, Inc. v. DePasquale (1979), 443 U.S. at 405, 99 S.Ct. at 2918, 61 L.Ed.2d at 637, in cautioning that there was no set procedure to be employed by a trial court to determine whether or not a part of the trial court should be closed, stated:

> . . . To the contrary, in my view, and, I think, in the view of the majority of this Court, the lower courts are under no constitutional constraint either to accept or reject these procedures. They remain, in the best tradition of our federal

system, free to determine for themselves the question of whether to open or close the proceeding. Hopefully they will decide the question by accommodating competing interests in a judicious manner but as far as the constitution is concerned, the question is for them and not us to resolve.

From the foregoing discussion, it will be seen that there is no reason now for this Court to reverse the closure order of the District Court. The Tribune concedes that the reason for closure was proper. The additional relief requested by the Tribune in the application for supervisory control is likewise not suitable in the present context. The application for supervisory control must therefore be denied.

We come, therefore, to the question of whether the decision of the District Court in the contempt proceedings should be affirmed, modified or reversed.

Usually on a petition for a writ of certiorari to review a contempt order, if we did not have before us the aggrieved person, we would be constrained to dismiss the application. Here, however, we adopt as a premise that through the contempt order, the Great Falls Tribune itself is the aggrieved entity.

On an application of a writ of certiorari to review a contempt order of the District Court, our review is limited to an examination of the record to determine whether the District Court acted within its jurisdiction, and whether the evidence supported the finding and order of contempt. Schneider v. Ostweld (1980), 617 P.2d 1293. In such a review, we are limited to the record compiled before the District Court. State ex rel. Sell v. District Court (1916), 52 Mont. 457, 158 P. 1018.

The record here is clear. The District Court had ordered a closure for a probation revocation proceeding

- 13 -

because of the possibility that if information developed in the proceeding became known to the public, there was danger of harm to a person involved. All sides admit that the order of closure was providently granted.

Melody Perkins, as a reporter for the Great Falls Tribune, entered the courtroom where the revocation hearing was ongoing, and was then advised by the District Court that the proceedings had been closed. The reporter said, "Okay," and retreated from the courtroom.

At this point, no person, including representatives of the press, had any right to intrude further upon the judicial proceeding unless within the number of those persons excepted under the closure order of the court. Notwithstanding, Melody Perkins, on the direction of her editor, re-entered the court in the company of another person, interrupted the judicial proceeding, and eventually left the courtroom on the threat of expulsion by the District Court through a bailiff.

Other options were open to Melody Perkins and the Great Falls Tribune when first she learned of the closure and left the courtroom. She, or a representative of the Tribune, could have gone to the district judge, in chambers or in open court following the closed hearing, and requested the reasons for closure. A letter could have been written to the district judge following the closed hearing requesting the reasons. A petition for a writ filed in this Court (a procedure followed here by the Tribune) would have resulted, as it did, in disclosure of the reasons for closing the hearing. We affirm the right of the public and the press to learn from the District Court the reasons for closure when the demands of individual privacy clearly exceed the merits of public disclosure. That right, however, is not so broad as to include interruption of the closed proceeding itself,

- 14 -

especially when interruption at a critical time might void the reason for the closure.

Under § 3-1-402, MCA, every judicial officer has the power to preserve and enforce an order in his immediate presence and in a proceeding before him when he is engaged in the performance of an official duty, and to compel obedience to his official orders. For the effectual exercise of those powers, a judicial officer may punish for contempt. Section 3-1-403, MCA.

Contempt of a court of justice or a proceeding therein occurs through "disorderly, contemptuous or insolent behavior toward a judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding;" "a breach of the peace tending to interrupt the due course of a trial or other judicial proceeding;" or "disobedience of any lawful judgment, order or process of the court." Section 3-1-501, MCA. (Emphasis added.)

Under the statutes, the District Court Judge here acted within his jurisdiction on a contempt charge for a disorderly action that occurred before him which tended to interrupt his judicial proceeding and which appeared to be in disobedience to his order that the hearing was closed. The penalty is within the provisions of § 3-1-519, MCA. Under the circumstances, the judgment of contempt must be sustained, as no grounds can be found to justify the issuance of a writ of certiorari directing otherwise.

Accordingly, both the application for writ of supervisory control and the application for writ of certiorari are denied.

John C. Sheehy
_____
Justice

- 15 -

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_____

_____

_K. C. Gulbrandson_
_____

Justices

Justice R. C. McDonough specially concurs.

I concur with the majority opinion. However, inasmuch as most hearings are closed at the request of both parties, or without objection by the non-requesting party, some accountability for such a grave discretionary step is warranted in the interest of participatory government. I favor the adoption of a rule which in essence would require the District Court Clerk to file an annual public report with this Court, stating at a minimum: (1) the number of discretionary closings, (2) the type of each case, and (3) the judge presiding. A copy of this report would be available to the public in each clerk's office.

_____
Justice

-17-

Mr. Justice William E. Hunt, Sr, dissenting.

I dissent and would reverse and throw out the contempt charges against the reporter. This nation was founded upon the idea that all governmental proceedings should be conducted in the open under the scrutiny of the public eye. I therefore cannot sign the eloquent and thorough majority opinion because, however practical its reasoning, it reinforces the trend toward excluding private citizens from participation in their government.

When a judge determines that a closed hearing is appropriate, as the judge did here, it is up to him or her to ensure that members of the public cannot enter the courtroom. A member of the public entering an ineffectively closed courtroom would certainly disturb the proceedings and each entry would require a statement of the judge that the hearing was closed. Any inquiry by the citizen as to why he or she had to leave would subject him or her to contempt of court charges.

If the judge in this case had positioned a bailiff at the courtroom door or had posted a sign notifying the public that the proceeding was closed, this incident could have been prevented. If the newspaper editor, when notified of the closure, had followed the procedures set forth in the majority opinion to determine the purpose of the closure rather than sending his reporter back into the skirmish, the confrontation could have been averted. I fear that Melody Perkins was merely a pawn in the game between the press and the court.

And the consequence of this game? A case that holds that any member of the public can be ousted from a secret governmental meeting that appears to be an open meeting and subsequently cannot return to what still appears to be an

open meeting and ask why. Whatever her motive or reason for returning, when she respectfully and quietly reentered the courtroom, Melody Perkins was exercising a right she had as a citizen. The exercise of that right in that manner cannot be contempt. I would dismiss and throw the whole affair out of court.

William E. Hunt, Sr.
Justice