JUSTICE LEAPHART,
concurring in part and dissenting in part.
¶37 I concur in the Court’s conclusions that 1) the committee is a public body and an agency of the state government; and 2) the proposals submitted by the private vendors to the Department’s screening and evaluation committee are documents of a public body within the meaning of Article II, Section 9 of the Montana Constitution. I also agree that § 18-4-304, MCA, is unconstitutional in that it protects proposals from public scrutiny during the negotiation stage. The purpose of this provision is to provide the State with an economic advantage. Although this is a laudable objective, it is not a privacy concern within the ambit of Article II, Section 9 of the Montana Constitution.
¶38 I dissent from the Court’s conclusion that there is no privacy interest in the entirety of the vendors’ proposals. In so concluding, the Court has failed to recognize that, if the vendors were provided a procedure to assert and adjudicate claims of trade secret or constitutionally-protected privacy, such claims may encompass the entirety of any one vendor’s proposal. There is an underlying assumption in the Court’s opinion that the trade secrets, if any, would constitute only a small part of each proposal. Given the nature of the project (construction of a private prison), I would assume just the opposite. That is, each vendor is attempting to sell the State a package, the essence of which is security — securing the public and the prison personnel from the prisoners and the prisoners from one another. The security features of a proposal are achieved through various means: architectural *169 floor plans, building materials, alarms systems, surveillance techniques, staff numbers and locations, etc. Although the Court clearly leaves the door open to protecting “trade secrets” from public disclosure, it assumes that a trade secret is necessarily something less than the whole and forecloses the possibility that the trade secret doctrine may, under certain circumstances, encompass most, if not all, of the prison proposal.
¶39 The parties did not litigate the question of what constitutes a “trade secret” nor do I purport to resolve that issue here. Suffice it to say that “trade secret,” as defined in the Uniform Trade Secret Act, is a very general and amorphous concept which includes information, formulae, patterns, devices, methods, techniques and processes. Section 30-14-402(4), MCA. Prior to adoption of the Uniform Act in 1985, we held that trade secret may encompass a design, system or process which gives a competitive edge. See Mountain States Tel. & Tel. Co. v. Dept. of Public Service Regulation (1981), 194 Mont. 277, 284, 634 P.2d 181, 186. In other jurisdictions, trade secret has been held to include such things as blueprints and drawings, American Precision Vibrator Co. v. National Air Vibrator Co. (Tex. App. 1988), 764 S.W.2d 274, 278; Ecolaire Inc. v. Crissman (E.D. Pa. 1982), 542 F.Supp. 196, 206; drawings of assembly-line layout and design, Weed Eater, Inc. v. Dowling (Tex. Civ. App. 1978), 562 S.W.2d 898, 901-02; as well as the architectural layout and design of a chain restaurant, Taco Cabana Int’l, Inc. v. Two Pesos, Inc. (5th Cir. 1991), 932 F.2d 1113. The prison vendor, like the above vendors, derives economic benefit from his or her product. The argument for recognizing the layout and design of the prison as a trade secret is, however, much more compelling than in the above-cited cases. To a much greater extent than the blueprints or designs of a factory or a restaurant, the prison layout and design have serious implications for the individual safety of the personnel working in the prison as well as for the prisoners and the public.
¶40 As the Court points out, the vendors were aware that their proposals (with the exception of trade secrets) would be subject to public inspection once the contract was executed. However, until the prison vendors are given a chance to assert their claims to “trade secrets” and the trial court has had an opportunity to adjudicate those claims, I would not rule, as a matter of law, that a vendor has no privacy interest in the entirety of its proposal(s).
¶41 Article II, Section 9 of the Montana Constitution guarantees the right of privacy. That right is guaranteed to corporations as well as *170 individuals. Belth v. Bennett (1987), 227 Mont. 341, 345, 740 P.2d 638, 641 (citing Mountain States, 634 P.2d at 188). The question presented here is whether the prison vendors had a subjective or actual expectation of privacy in their security package and whether society is willing to recognize that expectation as reasonable. Missoulian Inc. v. Board of Regents of Higher Educ. (1984), 207 Mont. 513, 522, 675 P.2d 962, 967. Although the right of privacy protects trade secrets, it cannot, by legislative fíat, be limited to trade secrets. It includes interests in security/safety measures as well. In State ex rel. Great Falls Tribune Co., Inc. v. Montana Eighth Judicial District Court (1989), 238 Mont. 310, 777 P.2d 345, we recognized that a probationer’s interest in physical safety was a reasonable expectation of privacy which outweighed the public’s right to know and thus the district court was justified in excluding the press from the revocation of probation hearing. Although the majority, in passing, recognizes the privacy interest in public safety, it fails to acknowledge that it may have been entirely reasonable for the vendors to assert, or the Department to assert on behalf of the vendors, a right of privacy in the security/safety features of the prison proposals, regardless of whether those features qualify as trade secrets.
¶42 As pointed out above, the safety of the prison personnel, the prisoners and the public depends upon the architectural design, building construction materials, alarms, and staffing of the prison. The safety of those individuals will be greatly compromised if, for example, the designs, drawings, blueprints and alarms system plans are disclosed to the public and printed in the newspaper for consumption by prospective inmates. In my view, the vendors, in the interests of insuring the safety of their employees (as well as the public), have every reason to expect that their building plans, blueprints, alarm systems and staffing plans will remain confidential. Since it is society (through its legislature) that seeks to construct this private prison for its own protection, we would be hard pressed to conclude that society is not willing to recognize the legitimacy of the vendors’ safety concerns for the safety and security of their personnel.
¶43 In conclusion, I submit the real problem presented by this appeal lies in the procedural deficiencies of the Montana Procurement Act. The Act does not require that vendors mark materials as trade secrets upon submission, nor does it provide a method whereby the vendor can designate materials as trade secret or claim privacy interests before information is disclosed to the public after execution of the con *171 tract. Since the Act does not afford an opportunity for the vendors to claim and specify secrecy or privacy interests nor for the Department to balance the right of privacy against the public’s right to know, the issues of trade secret and privacy have not been properly framed or adjudicated. Instead, we are left attempting to resolve constitutional issues based upon those interests the Department chose to broadly assert on behalf of the vendors without knowing the scope of what the vendors themselves, if given the opportunity, might claim as secret or private.
¶44 Until such time as the legislature (or, in the absence of legislation, this Court) provides a mechanism for vendors to assert and specify privacy and secrecy claims and for the Department to balance those claims against the public’s right to know, we should not be concluding that a trade secret is necessarily something less than the whole proposal or, in effect, denying a vendor the opportunity to assert a privacy interest in its safety/security features which could conceivably encompass the entirety or bulk of its proposal.