No. 80-448

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

THE MOUNTAIN STATES TELEPHONE AND TELEGRAPH
COMPANY, et al.,
              Plaintiff and Appellant,

MOUNTAIN STATES LEGAL FOUNDATION, et al.,
              Intervenors and Appellants,

       vs.

THE DEPARTMENT OF PUBLIC SERVICE REGULATION,
THE PUBLIC SERVICE COMMISSION OF THE STATE OF MONTANA,
et al.,
              Defendants and Respondents.

Appeal from:   District Court of the First Judicial Distrct,
               In and for the County of Lewis and Clark.
               Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

    For Appellants:

        J. Walter Hyer argued,  Helena, Montana
        Hughes, Bennett, Kellner and Sullivan, Helena, Montana

    For Intervenors:

        Maxwell Miller and R. Norman Cramer, argued, Denver,
         Colorado

    For Respondents:

        Eileen E. Shore, argued, P.S.C., Helena, Montana
        James Payne, Helena, Montana
        John C. Allen argued, Montana Consumer Counsel, Helena,
         Montana
        Roger Tippy, Helena, Montana
        Alan Joscelyn, Helena, Montana
        John R. Kline, Helena, Montana

                    Submitted:  June 9, 1981

                      Decided:  September 8, 1981

Filed:  SEP - 8 1981

_____
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This appeal arises out of the denial by the District Court, First Judicial District, Lewis and Clark County, of a petition for declaratory judgment by Mountain States Telephone and Telegraph Company (Mountain Bell) that the Public Service Commission (PSC) issue a protective order preserving the confidentiality of certain trade secrets claimed by Mountain Bell to be a valuable property right.

Mountain Bell is a public utility incorporated in Colorado, offering regulated telephone services, and other services in the State of Montana. The Public Service Commission is the arm of state government charged with the duty of regulating public utilities. The Montana Consumer Counsel (MCC), working with the Consumer Committee (both provided for in Title 5, Ch. 15, MCA) is given the statutory authority to appear at public hearings conducted by the PSC as the representative of the consuming public in all matters which in any way affect the consuming public. Section 69-2-201, MCA.

Mountain Bell filed an application for a rate increase for its regulated services before the PSC. MCC and the other defendants-respondents appeared before the PSC in opposition to the application for increases. During the course of discovery, MCC served upon Mountain Bell certain data requests. Mountain Bell filed objections to the data requests contending that the requested information consisted of trade secrets, and proprietary and confidential business information. Mountain Bell offered to make the information available to the commission and the MCC subject to the commission's entry of a proposed protective order.

The PSC denied Mountain Bell's motion for a protective order on the grounds that a corporation is not entitled to the protection of the individual privacy exception under 1972 Mont. Const., Art. II, § 9, and that parties of record should be able to examine any and all documents in a rate increase proceeding before the PSC.

After final denial by the PSC of the motion for a protective order, Mountain Bell filed an action for judicial review and declaratory relief in the District Court. The facts were stipulated to for the purpose of submitting pure legal issues to the District Court for summary judgment. Leave to intervene was granted the plaintiff-intervenors who also join as appellants in this cause.

Mountain Bell and intervenors filed motions for summary judgment. The District Court denied the motions for summary judgment, and ordered that general judgment be entered in the cause for all the defendants. From this summary disposition of the cause appeal was duly perfected.

Mountain Bell states the issue presented to us for review in this paragraph:

> "Whether certain identified provisions of Montana Constitutional and statutory law, which mandate public disclosure and dissemination of regulated utility trade secret property whenever such information is necessary to a rate determination of the Public Service Commission, are in fatal contravention to other Montana Constitutional guarantees and the protections and guarantees of the Fifth and Fourteenth Amendments to and the equal protection and interstate commerce clauses of the United States Constitution."

On July 9, 1981, we issued an interlocutory order in this cause, in effect requiring the issuance of a protective order regarding Mountain Bell's trade secret property. A copy of that interlocutory order is attached hereto. We undertake in this opinion to explain the reasons for our

-3-

interlocutory order, and to issue a declaratory judgment in favor of Mountain Bell.

There is no doubt raised by any party to these proceedings that the trade secret information is essential to the PSC to make a determination on Mountain Bell's application for revenue increases, and that Mountain Bell relies on the trade secret information in support of its application for revenue increases. The dispute centers solely around Mountain Bell's contention that in submitting the information requested upon discovery, it is entitled to a protective order preserving the confidentiality of the trade secret information from Mountain Bell's unregulated competitors.

Mountain Bell contends that the trade secret information is property which should be protected against compelled public disclosure to competitors, and asserts five grounds why certain Montana statutes and provisions of the 1972 Montana Constitution are unconstitutional, facially and as applied. The intervenors assert unconstitutionality under the Fourth and Fifth Amendments of the United States Constitution.

We refer first to the state constitutional section and the statutes which Mountain Bell contends are unconstitutional on their face and as applied here. The 1972 Mont. Const., Art. II, § 9 (the citizen's "right to know"), provides the right in all persons to examine documents or to observe the deliberations of all public bodies "except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." Section 69-3-105, MCA (the citizen's right to inspect), makes all records in the possession of the PSC open to the public at reasonable times subject to withholding only in the interest of the public for a period

-4-

not exceeding 90 days. Section 2-6-102, MCA (the citizen's right to inspect and copy records), opens the records of all public bodies in this state to inspection and copying, except as otherwise provided by statute, and gives any citizen the right to a certified copy of any such document upon payment of legal fees.

Basically, the principal legal reason given by the PSC for its denial of a protective order was that Mountain Bell was not entitled to the individual privacy provided for in the exception clause of the 1972 Mont. Const., Art. II, § 9. The PSC concluded that the constitutional section did not guarantee individual privacy to corporations. The District Court examined in detail the order of the PSC, and outlined for itself the issues to be decided by it in this cause in the following fashion:

> "While we agree with the Commission's principle, we cannot agree that the principle strips a private corporation of all rights to protect its trade secrets in Montana. The provisions of a constitution, as well as a statute, must be read together and effect must be given to all of them, insofar as possible. While the privacy interest of the corporation may not be placed in the balance in considering the public's 'right to know' guaranteed by Article II, Section 9 of our constitution, the right of the corporation to due process of law before being deprived of its property (Article II, Section 17), the right of the corporation to compensation in the event it is deprived of its property for a public purpose (Article II, Section 29), possibly its right to remain secure against unreasonable searches and seizures (Article II, Section 11) and even the right to enforce its unenumerated rights (Article II, Section 34) are not necessarily abrogated by its lack of entitlement under the 'right to know' provision. Nor, of course, are any rights guaranteed corporations by the U.S. Constitution. To protect any or all of these rights, the Public Service Commission might, in a proper case, issue a protective order despite the corporation's exclusion from protection under Art. II, Section 9. That section is therefore not facially defective, nor should it be held decisive in this case on the question of whether the plaintiff is entitled to a protective order.

"If the plaintiff is not necessarily excluded from entitlement to a protective order by Article II, Section 9, the next question is whether it is entitled, contrary to the specific statutes of Montana (inter alia MCA Sections 69-2-203(2), 69-3-104, 69-3-105, 2-6-102 and 2-6-104), to a protective order in this particular proceeding before the Public Service Commission. In relation to that question, part of the second legal reason given by the Public Service Commission is most pertinent and compelling: 'Parties of record in this proceeding should be able to examine any and all documents upon which the Commission will base its decision and upon which Applicant relies in filing its request for increased revenues ***'" District Court Opinion and Order, dated October 2, 1980.

The first task facing the District Court, and now facing us, is whether a trade secret of the kind involved here is property subject to constitutional protections. The District Court concluded it was. The District Court then further concluded, in effect, that because Mountain Bell is a public utility, subject to regulation, when it applied to the PSC for an increase of its revenues for its regulated services, Mountain Bell was required to divulge to the PSC and to the public all pertinent information upon which its application for rate increases was based and that such compelled disclosure did not violate any state or federal constitutional rights of Mountain Bell.

As we examine the constitutional problems brought up in this appeal, it becomes obvious to us that if the denial of a protective order has the effect of violating any one of Mountain Bell's constitutional rights as contended in this action, then such protective order ought to be granted if by so granting, the unconstitutional effect is obviated.

We have concluded that we agree with the District Court that trade secret information of the kind involved here is a species of property that is entitled to constitutional protection; but we have further concluded that the provisions

-6-

of our state constitution and statutes, when applied to deny the protective order in this case, have the effect of violating, as applied, the equal protection clause of the Fourteenth Amendment of the federal constitution, and the due process clauses of the state and federal constitutions. We leave for decision to some other case and time whether the remaining constitutional arguments of Mountain Bell have validity.

TRADE SECRETS AS PROPERTY

We are given no record here as to what it is we have categorized as "trade secret"; that is, whether it is an idea, design, system or implement, or combination of these. The respondents make no point of this, conceding, and we accept their concession, that some process resulting from Mountain Bell's research and development gives Mountain Bell a competitive edge as to the communications services it offers. This however, leads respondents to the argument that disclosure of the trade secret does not necessarily deprive Mountain Bell of the use of its trade secret. Regardless of dislosure, say the respondents, Mountain Bell still has the use of its trade secret available and that disclosure therefore does not take away from Mountain Bell any property of value. On that basis, respondents claim that the trade secret as such is not entitled to constitutional protection.

The intervenors point out that the respondents have not appealed from the finding of the District Court that trade secrets are protectable property. However, a determination that a trade secret is protectable property is sine qua non to our decision and in any event, is a matter which we must consider under Rule 14, M.R.App.Civ.P.

To be short about it, we agree with the District Court, which pointed out that the Ninth Circuit case of Tri-Tron

Intern. v. Velto (9th Cir. 1975), 525 F.2d 432, upheld the decision of the Montana Federal District Court recognizing as a compensable tort the deprivation of a trade secret through a breach of faith. Also, the Montana Rules of Civil Procedure recognize trade secrets as protectable. Rule 26, (C)(7), M.R.Civ.P. The District Court concluded:

> "To insist in the face of all this that Montana, or any other state, should eschew recognition of a trade secret as property would be to insist on a legal fabrication unsullied by reality." District Court Opinion and Order, dated October 2, 1980.

It is obvious to us that a trade secret which is used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it, is private property which could be rendered valueless or of less value to its owner if disclosure of the information to the public and to one's competitors were compelled. Surely, if an individual owned a trade secret and sought protection against compelled disclosure, we would hold such private property protectable under the exception in 1972 Mont. Const., Art. II, § 9, ("cases in which the demand of individual privacy clearly exceeds the merits of public disclosure"), to the extent necessary under the circumstances. Whether a corporate owner of a trade secret is entitled to the same exception we will discuss below.

COMPELLED DISCLOSURE AND DUE PROCESS

It is conceded that there is constitutional and statutory authority for compelled disclosure of trade secret information to the PSC and the Consumer Counsel. Indeed, Mountain Bell offers to disclose such information to those agencies, subject to the issuance of a protective order.

The Consumer Counsel is a constitutional agency having the duty of representing consumer interests in hearings before the PSC. 1972 Mont. Const., Art. XIII, § 2.

-8-

By statute, the Consumer Counsel has all the investigatory powers necessary to perform its duties and it may examine under oath in any PSC proceedings any employee of a regulated company and the business and corporate records of such a company in accordance with the law and in the exercise of its duties. Section 69-2-203, MCA. Since it is conceded by Mountain Bell that its application before the PSC for increased revenues is based in part upon its trade secret process, it is obvious that the Consumer Counsel, in the exercise of its duties, has a full statutory right to the disclosure by Mountain Bell of its trade secret information.

The PSC is vested with "full power of supervision, regulation, and control of . . . public utilities." Section 69-3-102, MCA. It has authority to inquire into the management of the business of all public utilities, keeping itself informed as to the method in which the same is conducted. It has the right to obtain from any public utility all necessary information to enable the PSC to perform its duties. Section 69-3-106, MCA. The PSC has jurisdiction to set rates to be charged by public utilities for their regulated services. Sections 69-3-301 and 69-3-302, MCA.

The compelled disclosure, therefore, of a trade secret owned by a public utility, where such information is necessary to the proper exercise of the duties of the PSC or the Consumer Counsel is not a "taking" or a deprivation under either the state or federal due process clauses. U.S. Const., Amend. V; 1972 Mont. Const., Art. II, § 17. (See, Great Northern Utilities Co. v. Public Service Comm'n. (1930), 88 Mont. 180, 293 P. 294, for a discussion of the constitutionality of the power of the PSC to regulate utility rates.)

The constitutional rub lies, as Mountain Bell contends, in the compelled disclosure of the information to all of the

public--including Mountain Bell's nonregulated competitors--beyond the state agencies. The District Court and the PSC concluded that such compelled disclosure was required under the right to know and right to inspect constitutional and statutory provisions of Montana.

As we have noted, section 69-3-105, MCA, provides that records of every nature in the possession of the PSC are open to the public at reasonable times, except for a minor provision that the PSC might withhold the information for not more than 90 days. Section 2-6-102, MCA, gives every citizen a right to inspect and get copies of any public writings. The term "public writings" would include all documents filed with the PSC. Section 2-6-101(2), MCA. Most importantly, the District Court and the PSC applied the 1972 Mont. Const., Art. II, § 9--the constitutional "right to know" provision--so as to compel disclosure to any citizen of all information in regulatory proceedings.

This is a classic case for the application of the "means end test" wherein the power of the state to interpose its authority on behalf of the public is balanced against the constitutional requirement of due process in the protection, in this case, of private property. Lawton v. Steele (1894), 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385. Courts are not required to follow one extreme or the other of colliding constitutional rights; judicial protection of the confidentiality of the trade secret information is proper where both the needs of the public and the protection of private property can equally be served. See, F.C.C. v. Schreiber (1965), 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383. We find it possible to protect fully the ownership of the trade secret information and at the same time, supply fully the need of the state

-10-

agencies for the information required in the exercise of their duties. We find that an order can be fashioned in such manner that the state public agencies can perform their duties with the fullest available information and at the same time disclose to the public all information required to enable citizens to determine the propriety of governmental actions affecting them. As the court stated in Pennzoil Co. v. Federal Power Commission (5th Cir. 1976), 534 F.2d 627:

> "Implicit in Schreiber is the proposition that the balancing of the public and private interests might compel secrecy, 381 U.S. at 296, 85 S.Ct. 1459. Therefore, in reviewing this case we must likewise determine whether the Commission abused its discretion in balancing the public and private interests." 534 F.2d at 631.

Here, neither the District Court nor the PSC balanced the competing public and private interests presented in this case. Rather, they determined that if the data was necessary for the determination by the PSC, that fact alone made it necessary to disclose all of the information to all of the parties, including persons not necessarily interested in the ratemaking process. Such a construction may lead in this case to the destruction of a property right based on material-ity rather than on a consideration of whether full public disclosure is based upon a reasonable and rational means to achieve the purpose inherent in the right to know provision. Moore v. City of East Cleveland, Ohio (1977), 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531; Nectow v. City of Cambridge (1928), 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842; Tyson & Bro.--United Theatre Ticket Offices v. Baton (1927), 273 U.S. 418, 47 S.Ct. 426, 71 L.Ed. 718; Norfolk & W. Ry. Co. v. Public Service Commission (1924), 265 U.S. 70, 44 S.Ct. 439, 68 L.Ed. 904; Jay Burns Baking Co. v. Bryan (1924), 264 U.S. 504, 44 S.Ct. 412, 68 L.Ed. 813; Adams v. Tanner (1917), 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336.

We have therefore issued a directive for a protective order in this case. In it is the result of the balancing process that we have described above. The order gives the PSC full access to all information needed by it in its regulatory duties with the right in the commission to preserve that information in its offices. Likewise, we have provided that the Consumer Counsel may receive such information and preserve the same in its office. We have made the same information available to any party, corporate or private, participating in the rate hearings before the PSC, subject to provisions which protect the confidentiality of the trade secret information. We are confident that such provisions provide consumers with adequate knowledge to participate fully in the commission's proceedings while at the same time protecting the interests of the utility. See Pennzoil Co., 534 F.2d at 632.

DUE PROCESS-FOURTEENTH AMENDMENT-EQUAL PROTECTION

The PSC held in its order denying a protective order on April 30, 1979 (and upheld its ruling on a motion for reconsideration) that "Mountain States Telephone and Telegraph Company is not to be considered an individual under Article II, Section 9, of the Montana Constitution."

The commission ruling took Mountain Bell out of the exception, contained in Mont. Const., Art. II, § 9, which states that the "right to know" does not apply "in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure."

The District Court, sitting in review of the PSC order declined to follow the PSC's rationale as to whether Mountain Bell was entitled to the benefit of the exception. Instead the District Court determined that the PSC would have applied

-12-

the "right to know" provision even-handedly, both to individuals and to corporations, and that therefore, the PSC would not have made any distinction between individuals and corporations as classes. The District Court concluded therefore that no equal protection question was presented to it by the ruling.

The District Court appears to base its denial of a protective order upon the premise that it is constitutionally permissible for the state in the exercise of a lawful governmental function, to regulate utility rates, and for its citizens to know how the state regulates such rates by full access to the information before the regulators.

We incline to agree with the District Court that the PSC would probably have applied equally the "right to know" constitutional provision and required disclosure whether it had before it an individual or a corporation. Nevertheless, we put this possible corporate classification to rest, as an unequal application of the right to know provision, by stating that the demands of individual privacy of a corporation as well as of a person might clearly exceed the merits of public disclosure, and thus come within the exception of the right to know provision.

We are reinforced in this conclusion by Mont. Const., Art. II, § 10, which states: "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest."

Showing a compelling state interest is an equal protection test, and it comes into play if the statute or state constitution affects a fundamental right. Schilb v. Kuebel (1971), 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502, 511, reh. den. 405 U.S. 948, 92 S.Ct. 930, 30 L.Ed.2d 818.

-13-

Since we have determined that a trade secret is a species of private property, the right to hold that property is a fundamental right. If the PSC were to be upheld in its ruling that the 1972 Mont. Const., Art. II, § 9, covers individuals but not corporations, it would be necessary that we find a compelling state interest for such classification to avoid the implications of the equal protection clause of the Fourteenth Amendment. We find no such compelling state interest. A corporation is a "person" within the due process and equal protection clauses of the Fourteenth Amendment to the U.S. Constitution. First Nat. Bank of Boston v. Bellotti (1978), 435 U.S. 765, 780, 98 S.Ct. 1407, 1418, 55 L.Ed.2d 707, 720, reh. den. 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 1150.

Even, however, if we were to agree with the District Court that no pernicious classification by the PSC is involved in this case because of its even-handed application of the right to know provision, we cannot escape the implications of the Fourteenth Amendment under our finding that a due process violation occurred in the refusal of the protective order. The Fourteenth Amendment does far more than extend equal protection in the application of state law. It also provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law.. . ."

Our state constitution also guarantees due process, 1972 Mont. Const., Art. II, § 17, and equal protection of the laws, Mont. Const., Art. II, § 4. The application by the PSC of Montana's right to know provision in this instance created a conflict of that provision with the due process and equal protection clauses of the state constitution.

It is not difficult to resolve the conflict if we keep in mind the federal constitutional provisions. The due

-14-

process clauses of the Fifth and Fourteenth Amendments of
the U.S. Constitution also conflict with Montana's right to
know provision as applied here by the PSC. It is appropriate
that state rules respecting due process principles be in
harmony with federal rules on the same subject, in the same
area. Matter of M.D.Y.R. (1978), 177 Mont. 521, 532, 582
P.2d 758, 765. By holding that the due process clause of
the Fourteenth Amendment and the due process clause of the
Fifth Amendment require us to provide protection to Mountain
Bell for its trade secrets to the extent not necessary for
regulation, we confirm the police power of the state to
regulate utilities, we resolve the seeming internal conflict
in our state constitution created by the PSC in the application
of the right to know provision, and we pay due accord to the
due process requirements of the U.S. Constitution.

INFORMATIONAL RIGHTS OF THE PSC AND THE CONSUMER COUNSEL

It should be noted that in our protective order, we
have placed no fetters upon the rights of the PSC and the
Consumer Counsel to obtain from Mountain Bell all information,
including trade secret data, upon which its application for
increased revenues is based. The police power of this state
in the regulation of public utilities is sufficient basis to
justify the unhampered rights of these state agencies to
receive such information. We have confirmed the rights of
these agencies to hold the information in their office
files. Any party to the ratemaking process shall have access
to the trade secret information to be used by their expert
witnesses in the ratemaking determination. Further dissemination
of the information we leave to the discretion of the PSC, to
be released, or not released, in the exercise by the PSC of
its ratemaking functions. We have thus balanced the rights

-15-

that all citizens acquired under the right to know provision of the state constitution with the purpose and function for which our laws compel disclosure by utilities of trade secrets. The right to know provision was designed to prevent the elevation of a state czar or oligarchy; it was not designed for, nor will we substitute, the tyranny of a proletariat.

By our holding here we have declared that the PSC and utilities appearing before it are not presented a Hobson's choice. The utility can hold and enjoy its private property to the extent not necessary to be divulged in the ratemaking process. The Consumer Counsel, representing the consuming public, has full access to the necessary information. Any other citizen, under our order, may also have access to the trade secret, provided his or her interest relates to the ratemaking function of the PSC.

The judgment of the District Court is reversed. This opinion shall be a declaratory judgment on the rights of the parties. We retain jurisdiction of this proceedings as recited in the attached order. No costs to any party.

_____
                        Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

-16-

_____
          Justices

_____
Hon. Robert M. Holter,
District Judge, Sitting
For the Hon. Daniel J.
Shea

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 80-448

THE MOUNTAIN STATES TELEPHONE AND TELEGRAPH
COMPANY, a Colorado Corporation,

Plaintiff and Appellant,

MOUNTAIN STATES LEGAL FOUNDATION,
NORTHWEST MINING ASSOCIATION, MONTANA
CHAMBER OF COMMERCE,

Intervenors and Appellants,

vs.

THE DEPARTMENT OF PUBLIC SERVICE REGULATION,
et al.,

Defendants and Respondents.

O R D E R

PER CURIAM:

This is an appeal from a judgment for the defendants-
respondents entered in the First Judicial District Court,
Lewis and Clark County, on December 3, 1980.

Briefs have been received and oral argument by all
parties had before this Court on June 9, 1981, and the
matter thereupon taken under advisement.

The Court has concluded that plaintiff-appellants
are entitled to protective relief; however, the constitutional
issues raised in the cause are complex, require extended
discussion, and the court's opinion will not be issued for
at least thirty days.

In the interest of expediting the proceedings before
the Public Service Commission which underlie the declaratory
action in the District Court, the Court deems it appropriate
to issue this interlocutory order pending issuance of its
final opinion;

-1-

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The judgment entered in favor of the defendants on December 3, 1980, in cause no. 43992 in the District Court of the First Judicial District, in and for the County of Lewis and Clark be and the same is hereby reversed, vacated and set aside.

2. The said District Court is hereby required and ordered to enter judgment in favor of the plaintiffs-appellants in said District Court. Said judgment shall include an order directed to the Department of Public Service Regulation, the Public Service Commission of the State of Montana, directing that the said Public Service Commission shall make and enter in the underlying proceedings before it the following order:

" O R D E R

"THE COMMISSION ORDERS THAT:

"1. All documents, data, information, studies and other matters furnished pursuant to any interrogatories or requests for information, subpoenas, depositions, or other modes of discovery that are claimed to be trade secret, privileged or confidential nature shall be furnished pursuant to the terms of this Order, and shall be treated by all persons accorded access thereto pursuant to this Order as constituting trade secret, confidential or privileged commercial and financial information (hereinafter referred to as 'Confidential Information'), and shall neither be used nor disclosed except for the purpose of this proceeding, and solely in accordance with this Order.

"2. All Confidential Information made available pursuant to this Order shall be given solely to counsel for the parties, and shall not be used or disclosed except for purposes of this proceeding; provided, however, that access to any specific Confidential Information may be authorized by said counsel, solely for the purpose of this proceeding, to those persons indicated by the parties as being their experts in this matter. Any such expert may not be an officer, director or employee (except legal counsel) of the parties, or an officer, director, employee or stockholder or member of an association or corporation of which any party

-2-

is a member, subsidiary or affiliate. Any member of the Public Service Commission, and any member of its staff, the Consumer Counsel, and any member of his staff may have access to any Confidential Information made available pursuant to this Order.

"3. Prior to giving access to Confidential Information as contemplated in paragraph 2 above to any expert, counsel for the party seeking review of the Confidential Information shall deliver a copy of this Order to such person, and prior to disclosure such person shall agree in writing to comply with and be bound by this Order; and said counsel shall, at the time of the review of such information and data, or as soon thereafter as practicable, deliver to counsel for the party furnishing said information and data a copy of such written agreement (which shall show signatory's full name, permanent address, and employer).

"4. Where feasible, Confidential Information will be marked as such and delivered to counsel. In the alternative, the Confidential Information may be made available for inspection and be reviewed by counsel and experts as defined in paragraph 2 herein in a place and a time mutually agreed on by the parties, or as directed by the Public Service Commission.

"5. In the event that the parties hereto are unable to agree that certain documents, data, information, studies or other matters constitute trade secret, confidential or privileged commercial and financial information, the party objecting to the trade secret claim shall forthwith submit the said matters to the Commission for its review pursuant to this Order. When the Commission rules on the question of whether any documents, data, information, studies or other matters submitted to them for review and determination are Confidential Information, the Commission will enter an order resolving the issue.

"6. All counsel for the Commission, the staff of the Commission and the staff of the Consumer Counsel and his attorneys shall be bound by the terms of this Order.

"7. Those parts of any writing, depositions reduced to writing, written examination, interrogatories and answers thereto, or other written references to Confidential Information in the course of discovery, if filed with the Commission, will be sealed by the Commission, segregated in the files of the Commission, and withheld from inspection by any person not bound by the terms of this Order, unless such Confidential Information is released from the restrictions of this Order either through agreement of the parties or, after notice to the parties and hearing, pursuant to the Order of the Commission and/or final order of a Court having jurisdiction.

"All written Confidential Information coming into the possession of the Consumer Counsel under this order may be retained by him in his office files, but shall be withheld from inspection by others, except for his staff and his counsel, unless released by the Public Service Commission and/or a final order of a court under this paragraph 7, and subject always to the terms of paragraph 8 of this Order.

"8.   All persons who may be entitled to receive, or who are afforded access to any Confidential Information by reason of this Order shall neither use nor disclose the Confidential Information for purposes of business or competition, or any other purpose other than the purposes of preparation for and conduct of this proceeding, and then solely as contemplated herein, and shall take reasonable precautions to keep the Confidential Information secure and in accordance with the purposes and intent of this Order.

"9.   The parties hereto affected by the terms of this Protective Order further retain the right to question, challenge, and object to the admissibility of any and all data, information, studies and other matters furnished under the terms of this Protective Order in response to interrogatories, requests for information or cross-examination on the grounds of relevancy or materiality.

"10.   This Order shall in no way constitute any waiver of the rights of any party herein to contest any assertion or finding of trade secret, confidentiality or privilege, and to appeal any such determination of the Commission or such assertion by a party.

"11.   Upon completion of this proceeding, including any administrative or judicial review thereof, all Confidential Information, whether the original or any duplication or copy thereof, furnished under the terms of this Protective Order, and finally determined to be confidential or trade secret, shall be returned to the party furnishing such Confidential Information upon request.   Confidential Information made part of the record in this proceeding shall remain in the possession of the Commission, and may remain in the possession of the Consumer Counsel as above provided in paragraph 7.

"12.   The provisions of this Order are specifically intended to apply to data or information supplied by or from any party to this proceeding, and any non-party that supplies documents pursuant to process issued by this Commission.

"13.   This Order shall be effective forthwith."

-4-

3. If any provision of the foregoing order required to be entered by the Public Service Commission shall impede or make impossible the performance of the lawful duties of the Public Service Commission, or the Montana Consumer Counsel in a manner not heretofore argued in this cause, such parties are hereby granted express permission to file directly in this Court such motions as may be appropriate to amend or vacate the offending provisions of said order, and this Court retains jurisdiction of the cause for that purpose.

4. This Court further retains jurisdiction of the cause for the purpose of issuing an opinion herein and for such further and other relief or judgment as may be appropriate in the premises.

DATED this 9th day of July, 1981.

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

_____
(Signature authorized 7/9/81)
Hon. Robert M. Holter,
District Judge, Sitting for
Mr. Justice Daniel J. Shea

-5-