No. 91-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

GREAT FALLS TRIBUNE COMPANY, INC.,
a Montana corporation,

                    Petitioner and Appellant,

-vs-

GREAT FALLS PUBLIC SCHOOLS, BOARD OF
TRUSTEES, CASCADE COUNTY, MONTANA,

                    Respondent and Respondent.

FILED

NOV 1 2 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

               Peter Michael Meloy argued, Meloy Law Firm, Helena,
               Montana

        For Respondent:

               Leslie  S.  Waite,  III  argued,  James,  Gray  &
               McCafferty, Great Falls, Montana

        For Amicus Curiae:

               Kimberly A. Kradolfer, Assistant Attorney General,
               Agency  Legal  Services  Bureau,  Helena,  Montana
               (Department of Labor & Industry)
               Bruce W. Moerer, General Counsel, Montana School
               Boards Association, Helena, Montana

                              Submitted:  May 21, 1992

                              Decided:  November 12, 1992

Filed:

_____
             Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order and declaratory judgment of the Eighth Judicial District, Cascade County. The District Court ruled that the collective bargaining strategy exception to the open meeting law, § 2-3-203(4), MCA, is constitutional. We reverse.

We address the following issue:

Is § 2-3-203(4), MCA, the collective bargaining strategy exception to the open meeting law, constitutional under Article II, Section 9, of the Montana Constitution?

Appellant raises an additional issue regarding the District Court's refusal to compel discovery of the subject matter of closed meetings. Because we determine the collective bargaining strategy exception to be unconstitutional, the motion to compel need not be addressed.

This action stems from labor negotiations between the respondent, Great Falls Public Schools, Board of Trustees (the Board) and a bargaining unit of teacher's aides and library aides. The Board engaged a fact-finder to conduct a hearing and make a report and recommendation to the Board in regard to the negotiations for a new bargaining agreement. After the fact-finder entered a written report, dated July 17, 1990, the Board issued an agenda in which it announced that on September 10, 1990, a closed meeting would be held to discuss matters related to the fact-finder's report. The appellant, Great Falls Tribune Company (the Tribune) contacted the Board and, pursuant to the open meeting law, requested the meeting be open. The Board agreed to conduct the

2

meeting in open session.

At the September 10, 1990 meeting, there were neither discussions nor deliberations with respect to the report. Instead, the Board moved that the report be rejected, a vote was taken and nothing further in regard to the report took place. There is a factual dispute regarding whether or not the Board conducted discussions relating to the fact-finder's report outside of and prior to the September 10, 1990 meeting. The Tribune alleges that discussions between members of the Board were held privately, specifically to avoid the requirements of the open meeting law. The Board denies such meetings occurred, suggesting that any discussions that may have taken place prior to the September 10, 1990 meeting were not "meetings" within the meaning of the applicable law. Further, it argues that any meetings that may have taken place were entitled to be secret because they pertained to collective bargaining strategy.

The Tribune initially filed this action against the Board alleging violation of the open meeting laws and the "right to know" provision of § 2-3-203, MCA, and Article II, Section 9, of the Montana Constitution. The Board filed a counterclaim requesting declaratory judgment that meetings held by the Board were lawful and proper and that the collective bargaining strategy exception to the open meeting law, § 2-3-203(4), MCA, is constitutional. The court granted the Board's motion for summary judgment on its counterclaim holding that the collective bargaining strategy exception is constitutional and was properly invoked. This appeal followed.

Section 2-3-203(4), MCA provides:

Meetings of public agencies and certain associations of public agencies to be open to the public - exceptions.

. . .

(4) However, a meeting may be closed to discuss a strategy to be followed with respect to collective bargaining or litigation when an open meeting would have a detrimental effect on the bargaining or litigating position of the public agency.

The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. Fallon County v. State (1988), 231 Mont. 443, 445, 753 P.2d 338, 339.

The Tribune contends that the collective bargaining strategy exception is constitutionally infirm because it expands on the limited exception allowed under Article II, Section 9, of the Montana Constitution. Article II, Section 9, of the Montana Constitution provides:

Right to Know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Essentially, the Tribune argues that under Article II, Section 9, a public agency may close meetings for the sole purpose of protecting individual privacy. The Tribune contends, and we agree, that the instant case does not involve a matter of individual privacy but instead involves a public agency desiring privacy.

To determine the meaning of a constitutional provision we

4

employ the same rules of construction employed to construe statutes. Keller v. Smith (1976), 170 Mont. 399, 553 P.2d 1002. The intent of the framers of a constitutional provision is controlling. The intent should be determined from the plain meaning of the words used. If that is possible, we apply no other means of interpretation. State v. Cardwell (1980), 187 Mont. 370, 609 P.2d 1230.

The Board argues that Article II, Section 9, of the Montana Constitution is ambiguous because the word "deliberations" is not clearly defined. The plain meaning of "deliberations" allegedly fails to clearly provide the intended scope of Article II, Section 9, and therefore, the Board argues, it is appropriate to resort to extrinsic aids and rules of construction. The dispositive issue is whether Article II, Section 9, requires a balancing of the right to know with other constitutional provisions and policy considerations or whether individual privacy is the only matter against which the right to know should be balanced.

We have clearly held that Article II, Section 9, of the Montana Constitution is unambiguous and capable of interpretation from the language of the provision alone. Great Falls Tribune v. District Court (1980), 186 Mont. 433, 437, 608 P.2d 116. Associated Press v. Board of Education (1991), 246 Mont. 386, 804 P.2d 376. In Associated Press, we noted Article II, Section 9, to be "unique, clear and unequivocal" and held that:

> We are precluded, by general principles of constitutional construction, from resorting to extrinsic methods of interpretation.

5

_Associated Press_, 246 Mont. at 391, 804 P.2d at 379. We decline the Board's invitation to revisit the already settled question of whether we will use extrinsic aids or rules of construction to interpret Article II, Section 9, of the Montana Constitution. We conclude that Article II, Section 9, is clear and unambiguous and does not require extrinsic aids or rules of construction to ascertain its intent that all meetings shall be open except when individual privacy matters are implicated.

Article II, Section 9, clearly instructs that when the demand for individual privacy exceeds the merits of public disclosure, the public's right to know may be limited. The right to know provision was designed to provide the public information to enable citizens to determine the propriety of governmental actions. Mountain States v. Department of Pub. Serv. Reg. (1981), 194 Mont. 277, 285, 634 P.2d 181, 186-187.

The Board argues that Article II, Section 9, is subject to balancing against other constitutional provisions. Specifically, the Board argues Article X, Section 8, of the Montana Constitution, among others, provides school boards supervision and control of schools in their district. Supervision and control is argued to include a duty to bargain effectively and to spend monies in an effective and responsible manner. The Board urges this Court to make a policy determination whereby the duty to supervise the school district is balanced against the right to know provision of the Constitution.

We are not persuaded by the Board's argument. First, Article

6

II, Section 9, is not necessarily in conflict with the other constitutional provision as the Board asserts. The Board's duty to supervise and control its district is not necessarily thwarted by opening its collective bargaining strategy sessions. Second, the Board fails to present a matter of individual privacy as mandated by the Constitution to create an exception to the open meeting law. Third, despite the mandate of power given the local boards to control their schools, Article X, Section 8, does not confer on school boards the power to act in violation of express guarantees contained in the Constitution. For example, school boards must comply with Article II, Section 13, the right of suffrage, etc. of the Constitution. The reasoning applied in Associated Press at 391, 804 P.2d at 379, applies here. We stated as follows:

> First and foremost, is the realization that the Constitution is the supreme law of this State. Its mandate must be followed by each of the three branches of government. Therefore, while this Court is authorized to adopt rules governing the practice of law, it may not enact any rule which violates express guarantees contained in the Constitution.

Such reasoning would be applicable if we adopted a procedural rule which violated the due process clause.

The Board relies on Mountain States for the proposition that this Court has engaged in a balancing of competing rights and interests when interpreting Article II, Section 9. In Mountain States, we determined that a corporation's trade secrets were a matter of individual privacy and that because trade secrets are constitutionally protected property rights, on balance, they exceeded the merits of full public disclosure. Our ruling in

7

Mountain States recognized and fulfilled the mandate of the public's right to know while simultaneously protecting Mountain States property/privacy interest in trade secrets. We interpreted the section relative to a specific matter as to whether it was encompassed within the meaning of the demands of individual privacy and to the extent the privacy would be protected. Here there is a lack of any individual privacy being involved.

We conclude that pursuant to the clear language of Article II, Section 9, meetings may be closed only when the need for individual privacy exceeds the merits of public disclosure. The collective bargaining strategy exception is an impermissible attempt by the Legislature to extend the grounds upon which a meeting may be closed. We conclude that § 2-3-203(4), MCA, is unconstitutional and the District Court is reversed.

We have been presented with arguments as to the potential hazards of creating an uneven playing field in the statutorily provided collective bargaining arena. However, our decision is governed by the facts and issues of the case before us. The Legislature and the citizens of Montana have the plenary power to take actions necessary to alleviate or eliminate any problems which may be present, or level the playing field, all within the constraints of the Constitution. Reversed.

Justice

8

We concur:

_____
                Chief Justice

_____

_____

_____

_____
                Justices

9

Justice Fred J. Weber dissents as follows:

Although it is carefully written, the majority opinion has stopped short in its failure to consider the impact of its ruling. The majority has concluded that all meetings of the Board of Trustees of the Great Falls public schools (School Board), must be open to the media, public and the unions with which the School Board is negotiating--even though the meetings cover the strategizing or planning for collective bargaining. The majority simply states that school board meetings may be closed only when the needs of individual privacy exceed the merits of public disclosure--which means that the exception can never apply to the School Board because it has no right of individual privacy. The majority concludes that § 2-3-203(4), MCA, is unconstitutional as an impermissible attempt to extend the grounds upon which a school board meeting may be closed.

I strongly dissent from the majority opinion. It has effectively destroyed the use of collective bargaining between school boards and unions. Instead of holding with the majority, I suggest there is precedent for balancing the interests of the parties and reaching a conclusion that the statute is constitutional. The tragedy of the majority opinion is that it has sent the following messages:

(1)   To the School Board:  You must do your bargaining planning in public.  If that destroys your ability to bargain, seek relief by new laws from the legislature or constitutional amendment from the people.

(2)   To the unions and other in Great Falls:  You may no longer effectively use collective bargaining to settle issues between your School Board and the various unions.

(3)   To the taxpayers of Great Falls and all of Montana: While the annual budgeted labor cost of the Great Falls districts is approximately $24.8 million, this Court is not required to consider the impact on your labor costs which may result from the elimination of collective bargaining between unions and the school districts.

I conclude that this Court should consider the impact of its decision.   I suggest that we should balance the two different constitutional provisions which apply in this case:

**Article II, Section 9:   Right to know.**  No person shall be deprived of the right . . . to observe the deliberation of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

**Article X, Section 8:   School district trustees.**  The supervision and control of schools in each school district shall be vested in a board of trustees to be elected as provided by law.

Considering the Article X requirement that a school board shall have supervision and control of schools, the legislature has enacted many laws with regard to the obligations of school district trustees to properly manage and expend funds.  In addition, Montana has adopted a great number of statutes which establish the manner in which collective bargaining shall be used by school districts as well as other public employers.   The controlling policy on such public employer collective bargaining laws is stated as follows:

**Policy.**  In order to promote public business by removing certain recognized sources of strife and unrest, it is the policy of the state of Montana to encourage the practice and procedure of collective bargaining to arrive at friendly adjustment of all disputes between public employers and their employees.

11

Section 39-31-101, MCA. I conclude that the unplanned result of the majority opinion is the elimination of friendly adjustment of disputes by means of collective bargaining.

The collective bargaining statutes define public employers to include school districts and also specifically protect public employees in the right of self organization. Under § 39-31-305, MCA, school districts are required to bargain collectively upon the following matters:

> **Duty to bargain collectively -- good faith.** (1) The public employer and the exclusive representative, through appropriate officials or their representatives, shall have the authority and the duty to bargain collectively. This duty extends to the obligation to bargain collectively in good faith as set forth in subsection (2) of this section.
> (2) For the purpose of this chapter, to bargain collectively is the performance of the mutual obligation of the public employer . . . and the representatives of the exclusive representative to meet at reasonable times and negotiate in good faith with respect to wages, hours, fringe benefits, and other conditions of employment ...

Sections 39-31-305(1)(2), MCA.

Under both the Constitution and statutes of Montana the School Board has supervision and control over the schools; and as a part of that supervision and control, the School Board is required to bargain collectively on wages, hours, fringe benefits, and other conditions of employment.

I will now review two Montana Supreme Court cases which I believe lead to a conclusion different than that of the majority opinion. These cases establish that invasion of a right of privacy is not the only exception which requires consideration under Article II, Section 9. In State ex rel. Smith v. District Court

12

(1982), 201 Mont. 376, 383-385, 654 P.2d 982, 986-987, the right to know was balanced against a criminal defendant's right to a fair trial. In pertinent part that opinion stated:

> . . . Whether the basis for the press and public's right of access be the First and Fourteenth Amendments to the United States Constitution or the "Right to Know" provision of the Montana Constitution, the guarantee is not absolute. It can be properly circumscribed when the right or interest against which it competes is weighty or compelling. Doubtlessly, the right of a criminal defendant to a trial by an impartial jury is such a right.

> . . .

> Based upon the Right to Know provision of the Montana Constitution and the right of access recognized under the First and Fourteenth Amendments to the United States Constitution, we hold that the public and press may be excluded from a pretrial suppression hearing only if dissemination of information acquired at the hearing would create a clear and present danger to the fairness of defendant's trial and no reasonable alternative means can be utilized . . . (Emphasis supplied.)

The key point as underscored is that the Right to Know constitutional provision is not absolute and it can be circumscribed "when the right or interest against which it competes is weighty or compelling." The Court then concluded that the right to a trial by an impartial jury was such a right. That of course has nothing to do with the right of privacy. While a criminal case is not directly comparable to the present case, it demonstrates that the narrow holding of the present case is not consistent with State ex rel. Smith. The conclusion of that case is that the right to a fair trial for a criminal defendant may properly be considered even though it has no relationship to the right of privacy.

13

The Right to Know provision of our Constitution was further considered in Mountain States Tel. & Tel. Co. v. Department of Pub. Serv. Regulation (1981), 194 Mont. 277, 634 P.2d 181, where the public was denied access to a telephone company's trade secrets in a Public Service Commission hearing. The PSC and the district court had required complete disclosure of all information to any citizen. In pertinent part this Court stated:

> . . . The District Court and the PSC concluded that such compelled disclosure was required under the right to know and right to inspect constitutional and statutory provisions of Montana.
>
> . . .
>
> Here, neither the District Court nor the PSC balanced the competing public and private interests presented in this case. Rather, they determined that if the data was necessary for the determination by the PSC, that fact alone made it necessary to disclose all of the information to all of the parties, including persons not necessarily interested in the rate making process. Such a construction may lead in this case to the destruction of a property right based on materiality rather than on a consideration of whether full public disclosure is based upon a reasonable and rational means to achieve the purpose inherent in the right to know provisions . . . (Emphasis supplied.)

Mountain States Tel. & Tel., 634 P.2d at 186-87. The Court further considered the potential destruction of a property right and concluded that certain limitations on the right to know were appropriate so far as the public was concerned. The Court stated:

> . . . We have thus balanced the rights that all citizens acquired under the right to know provision of the state constitution with the purpose and function for which our laws compel disclosure by utilities of trade secrets. The right to know provision was designed to prevent the elevation of a state czar or oligarchy; it was not designed for, nor will we substitute, the tyranny of a proletariat. (Emphasis supplied.)

14

Mountain States Tel. & Tel., 634 P.2d at 189.

The conclusion reached in the foregoing case was that it was proper to balance the property right of a party against the Right to Know provision of the Constitution. This is the type of balancing which the majority opinion has refused to apply in the present case. Mountain States Tel. & Tel. Co. balanced the rights of citizens under the Right to Know provision against the trade secret property interest of the telephone company and placed specific limits on the right to know. This is again an interest significantly different than the right of privacy specifically described in Article II, Section 9. It is this type of balancing which the majority has refused to use in the present case. I conclude that such a balancing of opposing interests is essential to a just determination of the issues before us.

Here the majority opinion found § 2-3-203(4), MCA, unconstitutional. Section 2-3-203(4), MCA, provides:

> **Meetings of public agencies and certain associations of public agencies to be open to public -- exceptions.** (1) All meetings of public or governmental bodies, boards . . . must be open to the public.
> . . .
> (4) However, a meeting may be closed to discuss a strategy to be followed with respect to collective bargaining or litigation when an open meeting would have a detrimental effect on the bargaining or litigating position of the public agency.

In arriving at its conclusion that § 2-3-203(4), MCA, is unconstitutional, the majority referred to the arguments by the parties as follows:

> The Board argues that Article II, Section 9, is subject to balancing against other constitutional provisions. Specifically, the Board argues Article X,

15

Section 8, of the Montana Constitution, among others, provides school boards supervision and control of schools in their district. Supervision and control is argued to include a duty to bargain effectively and to spend monies in an effective and responsible manner. The Board urges this Court to make a policy determination whereby the duty to supervise the school district is balanced against the right to know provision of the Constitution.

Considering that argument, the majority then concluded:

We are not persuaded by the Board's argument. First, Article II, Section 9, is not necessarily in conflict with the other constitutional provision as the Board asserts. The Board's duty to supervise and control its district is not necessarily thwarted by opening its collective bargaining strategy sessions. Second, the Board fails to present a matter of individual privacy as mandated by the Constitution to create an exception to the open meeting law. Third, despite the mandate of power given the local boards to control their schools, Article X, Section 8 does not confer on school boards the power to act in violation of express guarantees contained in the Constitution. (Emphasis supplied.)

I will discuss conclusions First, Second and Third from the above paragraph in that order.

I disagree with conclusion "First" which states that Article II, Section 9, is not necessarily in conflict with other constitutional provisions--I do not believe that is an appropriate test. The analysis should have considered whether or not there are other constitutional provisions and other rights which must be balanced against the Right to Know provision as was done in the above cited cases of State ex rel. Smith and Mountain States Tel. & Tel. Co. I strongly disagree with the conclusion that the Board's duty to supervise and control is "not necessarily thwarted by opening its collective bargaining strategy sessions." As I will discuss further, I believe collective bargaining has been

16

eliminated by the majority opinion and that does "thwart" the Board's duty to supervise and control the district.

In conclusion "Second," the majority stated that the Board failed to present a matter of individual privacy in order to create an exception to the Open Meeting Law. Because the Board has no individual privacy rights, there is no basis for closure of a school board meeting. In contrast, I conclude that under State ex rel. Smith and Mountain States Tel. & Tel. Co., we are required to balance the opposing constitutional rights of the parties and to consider the impact of the decision. This the majority has failed to do.

Conclusion "Third" emphasizes that Article X, Section 8, does not give school boards the power to violate express guarantees in the Constitution. Again, I do not believe that is a correct statement of the applicable standard. I believe we are required to balance the applicable claims and rights of the parties. Such a balancing does not suggest that school boards must have the power to violate the Constitution.

There is no factual debate in this case as to the impact of the majority opinion. The uncontradicted affidavit of the Superintendent of the defendant School District stated:

> The Board of Trustees must have the ability to close public meetings to discuss collective bargaining strategy when an open meeting would be detrimental to the Board's collective bargaining position.
> During the 1989 29-day teachers strike, the Board met in closed session to discuss whether to operate the schools in the face of the teachers strike. This discussion could not have been held in public without revealing our strengths and weaknesses.

17

There are serious problems in public strategizing. If the Board cannot privately strategize as a group about bargaining parameters, assessment of the parties' positions, bargaining tactics, and similar related matters, it would lose the only effective way it has to have full and frank discussions and to formulate and decide its strategy together. The resulting loss would interfere with and harm the Board's ability to effectively decide collective bargaining matters . . .

The Trustees of the School Board also submitted extensive testimony--again uncontradicted. The Trustees' testimony established that the holding of meetings open to the public would eliminate the Board's opportunity to strategize and set parameters or authority limits for negotiations. One trustee testified that bargaining would be very difficult if one side must strategize publicly while the other does not, and pointed out there is no room for compromise and negotiation if the school board's maximum position has already been expressed publicly. In considering the manner in which the trustees must meet, it is essential to keep in mind the following statutory constraints which apply to the School Board. Section 20-3-301, MCA, requires the trustees to act at meetings and provides in pertinent part:

> **Election and term of office.** . . .
> (2) The trustees shall be composed of the number of trustee positions prescribed for a district. . . . When exercising the power and performing the duties of trustees, the members shall act collectively and only at a regular or properly called special meeting. . . .
> (Emphasis supplied.)

In a similar manner, with regard to meetings, § 20-3-322, MCA, provides in pertinent part:

> **Meetings and quorum.** . . .
> (4) Business may not be transacted by the trustees of a district unless it is transacted at a regular meeting or a properly called special meeting. A quorum

18

> for any meeting is a majority of the trustees'
> membership. <u>All trustee meetings must be public
> meetings</u>, as prescribed by 2-3-201, except that the
> trustees may recess to an executive session under the
> provisions of 2-3-203. (Emphasis supplied.)

The foregoing statutes clearly eliminate the possibility of School Board members meeting separately or privately in connection with labor negotiations. They are required to act at either regular or special meetings and are specifically prohibited from transacting business at any place other than a regular meeting.

The School Board also emphasizes its responsibilities as the representatives of the voter taxpayers in order to see that their tax dollars are expended wisely. Again, there are many statutory requirements for the proper discharge of these duties.

The majority opinion forces us to the following conclusions: First, all collective bargaining sessions including strategy sessions by the School Board must take place at regular meetings open to the public and to the negotiating unions. Second, effective collective bargaining as contemplated by our extensive public bargaining code sections will be eliminated between school boards and unions. Where a union has total access to the thinking, strategy and plans of the school board, there is no possibility for collective bargaining as we have known it. Negotiations are eliminated when one party has total knowledge of the thinking on the part of the other.

I suggest the majority opinion will have a devastating impact on labor negotiations between the more than five hundred school districts of Montana and the various unions with whom they deal.

19

Collective bargaining as presently required under our statutes will be eliminated.

While such a result was not the plan of the majority opinion, its result is to eliminate the use of collective bargaining to arrive at friendly adjustments of disputes between school boards (and other public employers) and the unions representing their employees. The impact will be great upon the taxpayers, voters, students, employees and labor unions.

Clearly the majority opinion requires the school boards of Montana to carefully analyze their available means to settle issues and disputes with the unions. It requires a similar analysis on the part of all unions who have learned to function effectively for the benefit of their members and the public through the collective bargaining statutes in Montana. Last, it requires the legislature to commence a prompt review of its statutory requirements of collective bargaining to determine if there is some way in which some aspects of collective bargaining can be maintained.

I will not write a detailed analysis of the holding which I believe should be adopted by the majority opinion. Under Article X, Section 8, of the Montana Constitution and the various statutory provisions which apply to school districts, the trustees of a school district are required to supervise and control the expenditure of funds in their respective districts. It is common knowledge that labor costs constitute a majority of the expenditures by the trustees of school districts. I suggest that a proper balancing here would result in the conclusion that the interests of the school district trustees and the public whom they

20

represent in effective collective bargaining, when balanced against the Right to Know provision of our Constitution, justifies the limitation set forth in § 39-31-305, MCA. Such a balancing requires a conclusion that it is proper to close a school board meeting where there is collective bargaining or litigation when an open meeting would have a detrimental affect on that bargaining. Such a balancing makes good common sense. Such a balancing would allow collective bargaining to continue in the future.

_____
Justice

November 12, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Peter Michael Meloy
Meloy Law Firm
P.O. Box 1241
Helena, MT  59624

Leslie S. Waite, III
James, Gray & McCafferty
P.O. Box 2885
Great Falls, MT  59403

Bruce W. Moerer
Montana School Boards Association
One South Montana Avenue
Helena, MT  59601

Kimberly A. Kradolfer
Assistant Attorney General
Agency Legal Services
215 N. Sanders
Helena, MT 59620-1402

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudor_
Deputy