FILED

12/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0447

DA 23-0447

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 296N

JEFFREY L. HARDMAN,

      Petitioner and Appellant,

   v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:   District Court of the Twenty-Second Judicial District,
                    In and For the County of Stillwater, Cause No. DV 2013-46
                    Honorable Matthew J. Wald, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Joseph P. Howard P.C., Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
          Attorney General, Helena, Montana

          Nancy L. Rohde, Stillwater County Attorney, Ryan Addis, Deputy
          County Attorney, Columbus, Montana

                          Submitted on Briefs:  August 28, 2024

                                  Decided:  December 10, 2024

Filed:

                       _____
                                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Jeffrey L. Hardman appeals from the June 21, 2023 Findings of Fact, Conclusions of Law, and Order Denying Amended Petition for Postconviction Relief (Order).  We affirm.

¶3     In November 2009, the State charged Hardman with Deliberate Homicide in violation of § 45-5-102, MCA.  A charge of Tampering with Evidence, in violation of § 45-7-207, MCA, was later added.  Following a four-day jury trial starting August 27, 2010, Hardman was found guilty of both counts.  We upheld the conviction on appeal. *See State v. Hardman*, 2012 MT 70, 364 Mont. 361, 276 P.3d 839 (*Hardman I*).

¶4     On June 27, 2013, Hardman filed a pro se Petition for Postconviction Relief (Petition) alleging, among other things, ineffective assistance of counsel (IAC).  On August 2, 2013, without ordering a response from the State, the District Court dismissed Hardman's Petition as procedurally deficient for failure to comply with § 46-21-104(1)(c), MCA.  Hardman appealed to this Court.  We affirmed in part, reversed in part, and remanded for further proceedings. *Hardman v. State*, No. DA 13-0524, 2014 MT 236N, ¶ 9, 2014 Mont. LEXIS 495 (*Hardman II*).  Without taking any view on the merits, we

concluded that Hardman's non-record-based IAC claims were sufficiently pled and should have required a response from the State to properly evaluate whether further proceedings were warranted. *Hardman II*, ¶ 7.

¶5 On remand, the District Court granted Hardman's motion for leave to file an Amended Petition for Postconviction Relief (Amended Petition) and appointed counsel for Hardman. Relevant to the appeal now before us, Hardman argued trial counsel was ineffective for failing to inquire of the venire regarding exposure to pretrial publicity. The State responded, and trial counsel filed an affidavit responding to Hardman's IAC claims.

¶6 Before trial, there were numerous articles concerning the homicide, its investigation, and Hardman's actions thereafter. During voir dire, trial counsel did not ask each prospective juror questions regarding their exposure to publicity surrounding the homicide. However, they were all extensively questioned about their ability to remain impartial and judge the case based solely on evidence presented at trial. All jurors indicated they would and could set aside any biases or preconceived opinions and judge the case based solely on the evidence at trial.

¶7 The District Court reviewed the pretrial media coverage attached to Hardman's Amended Petition and concluded it was not of such an inflammatory nature that failure to question the venire on it constituted structural error requiring a new trial. It further found that trial counsel had effectively examined each of the prospective jurors about their potential biases or prejudices, falling within the wide range of conduct considered effective. The court denied postconviction relief. Hardman appeals.

¶8 Hardman argues that regardless of whether the pretrial publicity was inflammatory or not, counsel was *obligated* to ask about venire members' knowledge of it during voir dire. Hardman also argues that counsel's failure to question the venire about pretrial publicity constitutes structural error requiring reversal.

¶9 The amount and nature of pretrial publicity surrounding a case may affect the defendant's ability to obtain a fair trial by an impartial jury. *State v. Nichols*, 225 Mont. 438, 444, 734 P.2d 170, 173 (1987). Thus, voir dire is an important tool to determine whether potential jurors have been so affected by pretrial publicity as to be unable to render a fair verdict. *Nichols*, 225 Mont. at 444, 734 P.2d at 173. "A defendant's right to a fair trial by an impartial jury is jeopardized when the publicity surrounding the case is *inflammatory* in nature" which is characterized by "'editorializing on the part of the media or any calculated attempt to prejudice public opinion against [defendant] or to destroy the fairness of the [jury] pool.'" *Nichols*, 225 Mont. at 444, 734 P.2d at 173–74 (quoting *State v. Armstrong*, 189 Mont. 407, 423, 616 P.2d 341, 350 (1980)). In *Nichols*, we held that pretrial publicity was not neutral and had sensationalized the case but that it was not inflammatory in that the defendant had generated and verified much of the publicity himself. *Nichols*, 225 Mont. at 444, 734 P.2d at 173–74. Indeed:

> In the modern world it is impossible to create an artificial, antiseptic environment from which prospective jurors may be drawn who have heard nothing of a serious crime committed in their midst. People read newspapers. They listen to radio and television newscasts. It is only where they form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court that they become disqualified as jurors. A probing voir dire examination of prospective jurors is the judicial mechanism for determining this.

*Great Falls Trib. v. Dist. Ct. of Eighth Jud. Dist.*, 186 Mont. 433, 439–40, 608 P.2d 116, 120 (1980) (internal citation omitted). In *Great Falls Tribune*, this Court examined 92 exhibits of pretrial media coverage, all detailing the background of the case—the rape and murder of a 69 year-old victim, cutting her throat, sticking a knife in her chest and defendant's subsequent arrest following a high speed chase—and determined that they were "factual reporting without editorializing and [were] no more inflammatory than background information on any other brutal crime." *Great Falls Trib.*, 186 Mont. at 439, 608 P.2d at 119–20; *see also State v. Devlin*, 2009 MT 18, ¶ 24, 349 Mont. 67, 201 P.3d 791 (expanding factors to determine inflammatory pretrial publicity).

¶10     Similarly, here, after reviewing the articles attached by Hardman, we do not find the pretrial publicity to be inflammatory. The articles were straightforward factual accounts of the investigation of a far less "brutal" homicide than that in *Great Falls Tribune*, without editorializing. Two articles, shortly after the victim's death and almost a year before trial, summarized his obituary and recalled stories that the victim's father told about him. These articles would not have inflamed a jury against Hardman in the way he alleges such that any jury pool would be permanently tainted against him. Several articles from the same period also briefly discussed a note that Hardman had allegedly written, and a "threatening voicemail" that he had allegedly left on the victim's phone. Further, these articles discussed a potential witness that Hardman had allegedly recounted details of the homicide to. The reporting ceased at this time until May 2010, three months before trial, when an article discussed that the District Court had denied Hardman's motion to suppress a pastor's

5

testimony (the witness) recounting Hardman's comments to him. It was a short article that only discussed that the court had ruled the pastor would be allowed to testify.

¶11 At trial, Hardman's handwritten note was read aloud and published to the jury. The threatening voicemail from Hardman was played for the jury. And the pastor testified in detail as to the nature of Hardman's admissions to him. We cannot say that the reporting in this case was of such an inflammatory nature that counsel would have been ineffective for failing to ask the venire members about their exposure to pretrial publicity from nearly a year before.

¶12 The only facts reported that were not admitted at trial were that Hardman had a criminal history that "include[d] several misdemeanors and at least one felony." An article from November 2009, corrected a prior article by stating that prior reporting of a conviction in West Virginia was incorrect. Given voir dire as a whole, we cannot conclude that this would have inflamed the jury pool such that counsel was ineffective for failing to ask about exposure to pretrial publicity. *See Great Falls Trib.*, 186 Mont. at 439, 608 P.2d at 120 (distinguishing the "massive [and] pervading" publicity which exerted an influence upon jurors to ensure a conviction in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507 (1966), and *Estes v. Texas*, 381 U.S. 532, 85 S. Ct. 1628 (1965)); *see also Devlin*, ¶¶ 21, 27 (citing *State v. Fuhrmann*, 278 Mont. 396, 409–10, 925 P.2d 1162, 1170–71 (1996)). Similarly, this case does not present the same pervasive pretrial publicity of the cases Hardman relies upon. *Compare, e.g.*, *Sheppard*, 384 U.S. at 338–42, 86 S. Ct. at 1510–12; *see also State v. Kingman*, 2011 MT 269, ¶ 42, 362 Mont. 330, 264 P.3d 1104.

¶13 We apply a two-pronged test to determine whether counsel was ineffective: the defendant must (1) show that counsel's performance was deficient or fell below an objective standard of reasonableness, and (2) establish prejudice. *State v. Deschon*, 2004 MT 32, ¶ 31, 320 Mont. 1, 85 P.3d 756. In doing so, the defendant must overcome a strong presumption that counsel's actions fall within a wide range of reasonable decisions. *Deschon*, ¶ 31. We find Hardman does not establish that counsel's voir dire examination was deficient, notwithstanding that he did not probe into each venire member's exposure to pretrial publicity.

¶14 The venire members were asked if anyone knew Hardman, the victim, or the victim's father, who was a county commissioner. One potential juror said he knew both the victim and his father. Counsel asked him if he had heard anything about the case. The State objected so that he did not say something he heard about the case in front of the rest of the venire members. In chambers, they discussed questioning venire members alone if they were going to discuss knowledge of the case as several people had indicated they knew the victim and there had been press about the homicide. One venire member who indicated they knew the victim's family said he had not heard anything about the case. Another indicated they had formed no opinion on the case. A third said they could be unbiased but that it would be very difficult. And a final venire member said she knew a family member but had not kept in touch for many years and could remain unbiased. Additionally, three venire members indicated they knew potential State witnesses and counsel asked if they had discussed or knew anything about the case. Without asking each

venire member specifically about their exposure to pretrial publicity, counsel probed into their knowledge of the victims and witnesses and their knowledge of the case.

¶15 Counsel also asked if there was anybody who had already made up their minds about the case or prejudged Hardman. Finally, all venire members were asked a catchall question of whether they had any reason that they would not be able to find Hardman either guilty or not guilty based solely on the evidence of the case. Counsel then questioned the potential juror who had indicated knowledge of the case in chambers. The potential juror indicated he only knew what he had seen in the news but had not prejudged the case and agreed the media could have gotten the facts wrong and that he could decide the case based only on the facts and evidence presented at trial. Counsel exercised one of his peremptory challenges on that juror.

¶16 In an affidavit responding to Hardman's Amended Petition, trial counsel averred that his focus during voir dire was to find people who knew the decedent or his father in the matter. Given the media coverage, discussed above, we do not find it unreasonable that counsel focused his efforts at finding venire members who knew the victim or his family and using peremptory challenges on them rather than focusing on if anyone had read the non-editorial or inflammatory articles from nearly a year before trial. Hardman has not overcome the strong presumption that counsel's actions were reasonable. Counsel adequately questioned prospective jurors given the facts of this case to determine whether they should be challenged for cause and to intelligently exercise peremptory challenges.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

8

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON